HARRY FEINBERG et al.

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 24, 1898.*

1. NEW TRIAL—*motion for new trial based on absence of witnesses to alibi must show diligence.* An affidavit in support of a motion for a new trial, based on the absence of witnesses to prove an *alibi*, must show due diligence to procure their attendance at trial, and that some good reason existed why they were not subpœnaed.

2. CRIMINAL LAW—*not error for court to refuse to pass case on account of counsel being engaged in another court.* Where the rules of a criminal court provide that no case shall be passed or continued by reason of the engagement of counsel in another court, it is not error for the court to require a criminal case to be tried by appointed counsel in such contingency, particularly where the case was passed at a former term for the same reason.

3. SAME—*court may, in absence of proper showing, refuse to allow appointed counsel time for consultation.* It is a matter within the discretion of the trial court to grant or refuse a request by counsel appointed to represent the accused in the absence of his retained counsel for time to consult with the accused and his witnesses as to his defense, where he has been in court with the accused all day, makes no showing of prejudice from lack of time, and refuses to proceed to trial though given an opportunity the next morning.

4. SAME—*prejudicial remarks by court in presence of jury are ground for reversal.* A remark by the court to counsel for the accused, in the presence of the jury, in the words, "Do you mean to say, sir, that there is no evidence here to show the guilt of the defendant? I say there is evidence," is reversible error.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

At the October term, 1897, of the criminal court of Cook county, the plaintiffs in error, Harry and Joe Feinberg, were convicted of the crime of robbery. One Burns, who was jointly indicted and tried with them, was acquitted. The evidence showed that on the night of July 8, 1897, five men,—four of whom wore masks,—entered a street car in Chicago at the end of its run, and with

drawn revolvers made an assault upon the prosecuting witness, Charles F. Freligh, who was the conductor, and forcibly took from him his gold watch and $31 in money. Freligh identified Joe Feinberg at the trial as the one of the robbers who wore no mask, and it was shown that soon after the robbery Harry Feinberg had possession of the watch, and was arrested while endeavoring to dispose of it at a pawnshop.   The defense disclosed by the cross-examination of the People's witnesses, the remarks of counsel and affidavits for a new trial contained in the bill of exceptions, (for no evidence was adduced by plaintiffs in error,) was an *alibi*, and that the identification of plaintiffs in error was falsely or mistakenly made.

The indictment was returned at the July term, 1897. When the case was called for trial at the October term, John C. King, who had been employed by plaintiffs in error as their counsel in the cause, was not present, but Frank C. Zink, an attorney, appeared in court at his request and informed the court that King was then engaged in the trial of another cause which had been entered upon the previous day, and would continue to be so engaged for two days more, and moved the court to pass the case until King could appear for his clients.   The attorney for the People informed the court that the case had been passed at a previous time because King was engaged in the trial of another cause, and the court denied the motion and directed that the trial proceed, and Zink, for plaintiffs in error, excepted.   The court announced that he would appoint Zink to defend plaintiffs in error, but Zink, stating that he was wholly unfamiliar with the case and had made no preparation, was permitted to decline. Zink again asked the court to pass the case until he should go to the circuit court and inform King of the court's decision, but his request was refused and he left the court room, and the court directed a jury to be sworn to answer questions.   The court then asked plaintiffs in error if they wanted a lawyer, and they replied that they

wanted no one but their own lawyer to defend them. The jury were then sworn to answer questions, and thereupon the plaintiff in error Joe Feinberg protested against their being tried in the absence of their attorney, and stated to the court that they could not defend themselves. Mr. Ramsey, attorney for the other defendant, Burns, then stated to the court that he did not know what the defense of the Feinbergs was, and could not defend them, and moved the court, on behalf of plaintiffs in error, to pass the case until King should become disengaged. The motion was overruled and an exception taken, and the court directed that the trial proceed. The court again asked plaintiffs in error whether or not they wanted counsel, and they replied that they did if they could not get their own lawyer, whereupon the court appointed Leon Hornstein, an attorney present in court, to defend them, who stated to the court that he knew nothing about the case but would do the best he could under the circumstances. The jury were then examined, selected and sworn to try the cause. The witness Freligh was called and sworn, whereupon J. E. Ingram, an attorney, came and stated to the court that he came at the request of King, who was then engaged in the trial of another cause in the circuit court, to ask that the case be continued until King should be disengaged; that plaintiffs had been in prison for some months, and that he understood that their evidence was not then in court, and that they could not safely go to trial without their counsel and without their witnesses. The court stated that he had been informed by the State's attorney that the case had been passed once for a similar reason and that he would not grant a second continuance for the same reason. Ingram and Hornstein thereafter represented plaintiffs in error throughout the trial.

When the People rested their case, the record shows the following proceedings were had:

Mr. Ingram: "If the court please, I see it is now about adjourning time, and as the court appointed Mr. Horn-

stein to defend these boys this morning in court, and he informs me that he has not had an opportunity to examine them and see what their defense is, neither has he talked to any of the witnesses, and as I have already informed your honor that Mr. King is engaged in the trial of a case before his honor Judge Dunne, in the circuit court, and I chanced to come in court where Mr. King was engaged and he requested me to see if this case could not be passed until he finished the case in which he is now engaged, or, if the case was forced to trial, to proceed and assist in the defense, now, I would ask the privilege of the court for an opportunity to talk with the Feinberg boys, and also the indulgence of the court that I may talk to their witnesses, to see what they will testify to and of what knowledge, in general, they possess of the facts of this case.

The court: "You have been sitting with them in court all day and had time enough to consult them, and I will not give you any time; so go ahead with your defense. You must finish this case right now.

Mr. Ingram: "But, your honor, I have not talked with the defendants, and must hear their side of the case before placing them upon the stand,—that is, if I do so at all; and I must have an opportunity to examine their witnesses, and it will only occupy the indulgence of the court but a very short time. Your honor can't conscientiously ask me to proceed under the circumstances under which Mr. Hornstein and myself are now placed in reference to a proper defense.

The court: "You must proceed immediately.

Mr. Ingram: "I object to the ruling of the court, inasmuch as the constitutional rights of these defendants are jeopardized.

The court: "Are you going to proceed, sir?

Mr. Ingram: "I understand that Mr. Ramsey is ready to put in his defense for his client.

(Evidence for Michael Burns submitted by Mr. Ramsey.)

The court: "Several witnesses for the Feinbergs were sworn this morning and excluded from the court room. The usual hour for adjournment has not yet arrived. I will permit the defendants Joseph and Harry Feinberg to-morrow to call and examine any witnesses not now in attendance, but I will not adjourn now and permit witnesses now in attendance to be called and examined to-morrow.

"And thereupon the court had all the witnesses who had been sworn at the request of the defendants and excluded from the court room, who had not been examined, brought to the bar of the court, and then said to the counsel for defendants:

"If you want to examine any of these witnesses you must proceed with their examination now.

Mr. Ingram: "I do not wish to examine any of these witnesses.

The court: "Then we will adjourn, and to-morrow you can call and examine any witnesses except these now present.

"And thereupon the court adjourned until the following day. Court convened pursuant to adjournment on the 6th day of October, 1897, and the taking of testimony was begun. Further testimony was offered on behalf of the defendant Michael Burns, and at the conclusion of the same, the court, addressing counsel for Feinbergs, said:

The court: "Do you want to proceed with the defense?

Mr. Ingram: "No, your-honor; we rest our case."

After verdict, in support of the motion for a new trial, affidavits of King, Hornstein and the Feinbergs were filed, showing that King had been retained to defend plaintiffs in error, that he had consulted with them and talked with their witnesses, and had made preparation for the trial, and setting up, generally, the matters hereinbefore stated. Other affidavits set forth facts which, if true, would have shown that at the time of the robbery Joe Feinberg was at the home of his parents, where up-

wards of fifteen persons were in attendance at a birthday party given for his sister.

LEON HORNSTEIN, and J. E. INGRAM, for plaintiffs in error.

E. C. AKIN, Attorney General, (CHARLES S. DENEEN, and FRANK CROWE, of counsel,) for the People.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Inasmuch as it has been strenuously insisted upon by the plaintiffs in error in this court that by the method of procedure of the trial court they were deprived of the opportunity to make their defense in that court, a fuller statement of the proceedings below has been incorporated in the statement of the case foregoing than would otherwise have been necessary.

In respect of the motion for a new trial, based on the absence of witnesses to prove the alleged *alibi,* it is clear that the showing made in the affidavits was insufficient. No diligence in that regard was shown. The names of but two of such witnesses, said to have been fifteen in number, were given by whom it was claimed plaintiffs in error could have proved that one of plaintiffs in error was at a birthday party given for his sister at his parents' home, at the time the robbery was committed. None of these witnesses were called to testify, although one of them, the mother of plaintiffs in error, was present at the trial. No reason is shown why they had not been subpoenaed. If plaintiffs in error were attending such a party at the time of the robbery, they knew of the fact and knew the names of the witnesses by whom they could prove it. No reason is shown why the attendance of such witnesses could not have been procured, even after the trial commenced. It does not even appear that any effort was made to subpoena such witnesses after the court adjourned in the afternoon of the first day of the trial. It

is very clear, therefore, that no cause for a new trial existed on account of the absence of witnesses to prove the alleged *alibi*.

But counsel insist that the court erred in requiring plaintiffs in error to proceed at once with the trial on the call of the case, and in refusing to postpone the trial until their counsel could be released from the other trial in which he was engaged in the circuit court, and in refusing, at the close of the People's evidence, to suspend the proceedings for a reasonable length of time to enable counsel who appeared for plaintiffs in error to consult with them and to talk with their witnesses, so that they might properly present their defense and determine whether they should be called as witnesses in their own defense.   The following rule of the criminal court was then of record and in force: "That no case shall be passed, continued or postponed in this court by reason of the engagements of counsel in any other court."   The trial of the case had been postponed at a preceding term on the same grounds urged for this postponement.   It is evident there was no abuse of the discretion of the court in refusing to pass the case a second time for the reasons given. The ruling of the court did not operate to deprive plaintiffs in error of counsel.   The court appointed Hornstein to represent them, and Ingram appeared in King's place at his request, and it by no means appears that the accused were not ably represented.   Neither of these attorneys, after the court refused to wait for King, asked for time to enable them to present the defense properly, until the People had rested.   The court had, however, made it reasonably plain to them that no delay would be tolerated.   It will be observed that when, at the close of the People's testimony, counsel for plaintiffs in error asked for the indulgence of the court for a short time to enable them to consult with their clients and talk with their witnesses, so as to make a proper defense in the case, while the request was refused and they were directed to pro-

ceed immediately, they did not so proceed, and the ruling of the court was complied with by the other defendant, Burns, and plaintiffs in error were given an opportunity to proceed with their defense after court convened on the following morning,—at least as to the examination of such witnesses as were not in attendance the previous day. Had plaintiffs in error been compelled, by the ruling of the court and at the time it was made, to rest their defense for lack of opportunity of their counsel to consult with their clients and inform themselves concerning their defense, the action of the court would have been prejudicial error and sufficient to reverse the judgment. Under the bill of rights plaintiffs in error had the right to defend in person and by counsel, and the statute provides that "every person charged with crime shall be allowed counsel, and when he shall state upon oath that he is unable to procure counsel, the court shall assign him competent counsel, who shall conduct his defense;" and in *North* v. *People*, 139 Ill. 81, this court said: "We are not to assume that this was intended to be a mere empty formality, and that the counsel thus appointed should be compelled to act without being allowed reasonable time within which to understand the case and prepare the defense." But the accused and their counsel had time for consultation, and, so far as the record shows to the contrary, sufficient time in which to procure their witnesses and ascertain what pertinent facts were within their knowledge, before entering upon their defense the next morning. No witness, however, was called or offered, and plaintiffs in error rested their case without in any way making it appear to the court that they had not had sufficient time, since the adjournment the day before, to go on with their defense. Upon such a record it must be held the error of the court in the respect mentioned was not prejudicial and cannot operate to reverse the judgment.

It is next urged that the court made improper and prejudicial remarks during the progress of the trial. Dur-

ing a colloquy between the court and attorney Ingram in regard to the cross-examination of Sergeant Robinson, a police officer, occurred the following:

Mr. Ingram: "I object to the ruling of the court, and take exception. Your honor will remember that in the entire testimony of these witnesses on behalf of the State there is no testimony whatsoever tending to show guilt against the defendant Joseph Feinberg, except that of motorman Freligh, and I can show by this officer that this identification was procured by illegal means.

The court: "Do you mean to say, sir, that there is no evidence here to show the guilt of the defendant? I say there is evidence.

Mr. Ingram: "I except to the remarks of the court and also the court's ruling, and with all due respect must say, as well the court knows, you have no right to pass upon any matter of fact or express any opinion as to the guilt of these defendants, and in answer to the court's question I shall not respond."

This remark of the trial judge in the presence of the jury was serious error. It was somewhat, though not much, less forcible than to have said there was sufficient evidence to prove the defendant guilty. The evidence may have been sufficient to authorize a conviction, but that was a question for the jury and not for the court, and it was clear error for the court to express any opinion in the hearing of the jury as to the force or effect of the evidence upon the question of the guilt or innocence of the accused.

As the judgment must be reversed we have not thought it necessary to consider other objections urged.

The judgment is reversed and the case remanded.

*Reversed and remanded.*