(No. 5636. July 9, 1931.)

STATE, Respondent, v. CHESTER G. WARD, Appellant.

[1 Pac. (2d) 620.]

James F. Ailshie, Jr., J. R. Smead and W. D. Keeton, for Appellant.

Fred J. Babcock, Attorney General, and Maurice H. Greene, Assistant Attorney General, for Respondent.

GIVENS, J.—This appeal is from a conviction for murder in the first degree, and a sentence of life imprisonment. The appellant attacks the information because the original did not sufficiently allege deliberation and premeditation; that the court was without authority to permit an amendment of the information in this particular, because such amendment was one of substance and not of form, and that there was no plea to the amended information; hence the court was without jurisdiction to hear the cause.

The original information, dated November 11, 1929, designated the crime with which defendant was charged, as murder in the first degree, and one substantially the same was held sufficient in *State v. McClurg* (filed June 25, 1931).

The appellant was arraigned November 25, 1929, and plead not guilty. January 6, 1930, the information was amended by interlineation, and the wording as to premeditation elaborated.

At the first trial beginning January 7, 1930, the jury failed to agree; the second trial resulting in a verdict of guilty, was commenced April 21, 1930.

▮ 1929 Session Laws, chap. 72, p. 110, authorizes the amendment of an information as to form or substance after the plea, provided the defendant is not thereby prejudiced. The amended information was unquestionably sufficient. (*State v. Rogers*, 30 Ida. 259, 163 Pac. 912; *State v. Askew*, 32 Ida. 456, 184 Pac. 473; *State v. Dong Sing*, 35 Ida.

616, 208 Pac. 860; *State v. Arnold,* 39 Ida. 589, 229 Pac. 748; *State v. Boykin,* 40 Ida. 536, 234 Pac. 157; *People v. Davis,* 8 Utah, 412, 32 Pac. 670.) Appellant does not question that the jury was fully and accurately instructed as to what the state was expected to prove to sustain the charge of murder in the first degree, or that the jury did not know what issues were before it, and it is clearly apparent from the record that the appellant was in nowise prejudiced by the amendment. Ample time was given for him to interpose any special plea after the amendment and before the second trial. Furthermore, the record shows that at the time of the second trial, the appellant and counsel being present in the court, the clerk read the information charging the appellant with murder in the first degree, and stated that a plea of not guilty had been entered by the defendant. Appellant raised no objection, and in his objection to the jurisdiction of the court interposed at the beginning of the second trial, did not specify lack of plea. Any irregularity was thus in effect waived. (*State v. Poynter,* 34 Ida. 504, 205 Pac. 561, 208 Pac. 871.)

■■ After the first trial and before the second, appellant asked by appropriate motion, supported by affidavits, for a change of judges, on the ground that the judge who first tried the case was prejudiced against him. The judge who first tried the case granted the request, and commenting upon the fact that his associate judge in the eighth district was disqualified (who, it appears from the record, had been of counsel for the state, cause for disqualification under C. S., sec. 6499), named Honorable Miles S. Johnson, district judge of the tenth district, to try the case. Counsel before the second trial insisted that the court did not have jurisdiction, but did not specify the ground now urged by him, which is that Judge Reed, holding himself disqualified to try the case and granting the change of judge, because of prejudice, was without authority to name another judge, but that such judge should have been designated by the Governor, under sec. 12, art. 5, of the Constitution. C. S., secs. 6666 et seq., provide for a change of venue in civil cases; C. S., secs. 8888 et seq., provide

for a change of venue in criminal cases. C. S., secs. 6499 et seq., providing for a change of judge, however, apply generally to courts both in civil and criminal cases.

In *Day v. Day*, 12 Ida. 556, 86 Pac. 531, attention was called to the fact that prejudice of a judge was not a ground for a change under sec. 6499 (then R. S., sec. 3900), but that such ground existed under the Constitution.

This point has been directly passed upon in California under a statute at that time identical with ours, adversely to appellant's contention (*People v. Ebey*, 6 Cal. App. 769, 93 Pac. 379), and such ruling was reaffirmed in *Ex parte Burch*, 168 Cal. 18, 141 Pac. 813. (See, also, *State ex rel. Lamm v. Mid-State Serum Co.*, (Mo. App.) 272 S. W. 99.)

 Appellant assigns as error the giving of Instruction No. 5, on the ground that it placed the burden of proof to lessen the degree of the offense on the defendant. Conceding that it did so place the burden, it did not require the same beyond a reasonable doubt, or by a preponderance of the evidence, and such instruction was not out of harmony with the rule laid down in this court in *State v. Rogers, supra*, and *State v. Jurko*, 42 Ida. 319, 245 Pac. 685, to the effect that the burden is on the defendant to show facts which would cause the jury to have a reasonable doubt of whether the defendant was guilty of the greater grade of crime charged. (*State v. Shuff*, 9 Ida. 115, 72 Pac. 664.)

 The testimony of one Ryan, who testified for the state in the first trial, was read to the jury in the second trial, on a showing by the state that it was unable to produce the witness in person. The state made a *prima facie* showing to the effect that it was unable to locate the witness and had exercised due diligence, and while the appellant introduced evidence to the effect that the witness had been seen at various places and had been heard of, the question of the sufficiency of the showing was addressed to the discretion of the trial court, and as against appellant's objection, the showing was sufficient. (*State v. Brassfield*, 40 Ida. 203, 232 Pac. 1.)

Appellant's criticism of the instruction with regard to the definition of manslaughter is without merit, because the instructions taken together, correctly instructed on this point; and, furthermore, the action of the jury in finding appellant guilty of murder in the first degree, though instructed as to the elements of murder in the second degree, as an included offense, removed any question of prejudice with regard to the instructions on manslaughter, since, having found the appellant guilty of the greatest offense, it is evident that they did not consider the appellant guilty of any lesser offense. (*State v. Alvord,* 47 Ida. 162, 272 Pac. 1010.)

For a consideration of the other two errors assigned, it is necessary to briefly review the salient features of the case. The state's testimony, in effect, showed that on Sunday afternoon, August 4th, the appellant drove to the city of St. Maries from his home in Clarkia; parked his car across the street from a rooming-house operated by the deceased; went upstairs, knocked on a door of one of the rooms, and upon the deceased coming out in the hallway near the head of the stairs from another room, had some conversation with the deceased with reference to the presence of appellant's wife in the room vacated by the deceased, and following some wordy altercation, shot deceased. Appellant went rapidly down the stairs and into his car and drove away; parked his car some distance from St. Maries in a grove of trees and partly covered it with some boughs of evergreen. He evaded capture by the sheriff's posse, but later, on August 8th, came to the sheriff's office and gave himself up. The sheriff and his deputies testified that the defendant made statements to the effect that he did not suppose he would receive a severe sentence for killing such a man as deceased was, and that he intended to shoot him but not to kill him. There was also evidence of the death of the deceased, etc. Appellant claimed he shot in self-defense and produced evidence that on the morning of August 4th, his bulldog being missing, he went to St. Maries and saw the deceased, having been told by a

person that deceased had his bulldog. Appellant was informed by his brother and two other parties that his wife was being kept by the deceased in his rooming-house. He was also told that the deceased was a bad man and that he better look out for him; nevertheless he armed himself, came to the deceased's rooming-house and asked for his wife, and contends that when the deceased was attempting to draw a gun on him, shot the deceased; that he slept in the car all that night, and justified such serene repose by the fact that he had been up late the night before. He denied making inculpating statements to the sheriff in the presence of his deputies.

The defense produced witnesses who testified that deceased's reputation as a quarrelsome, turbulent and dangerous man was bad, as bearing on appellant's contention that deceased was the aggressor at the time of the shooting and to support appellant's plea of self-defense. The state, to rebut this, produced witnesses who testified deceased's reputation in the above particulars was good. Various errors assigned with regard to the examination of these witnesses, and the striking of the testimony of J. C. Brown, a witness for the defense, have been examined and are without merit.

Two errors, however, demand serious consideration. The character witnesses for the defense stated they had heard deceased's reputation discussed, and that it was bad. Some of the state's witnesses said they had heard deceased discussed, but had never heard his reputation questioned. Counsel for appellant objected that such witnesses were thus not qualified. The court in overruling such objections and motions to strike, stated:

"The Court: The Court will deny your motion and instruct the jury that the best character in the world is the fact that no one has discussed it.

"Mr. Keeton: We except to the Court's ruling.

"The Court: All right; that his reputation has never been discussed is the best evidence in the world of good character.

" .... The Court: When you talk about me commenting on the evidence, I am not commenting on whether or not it is true. I don't know anything about it. The Court's position is that if a man's name is brought up in discussion, the best evidence in the world is the fact that no one questions it. It is generally when something happens that causes people to discuss a man's reputation, and that is the position of the Court .... "

Appellant's counsel duly excepted to such remarks.

■ The state concedes the comments by the court were erroneous, but contends they were not prejudicial. The character witnesses for the defense had stated they had heard deceased's reputation discussed, and it was bad; the state's witnesses said they had never heard it questioned, and the court said the state's testimony in this regard was the best evidence in the world of good reputation. True, he later said to the jury that he was merely stating the law, but this was a comment on the weight of the evidence, and the jury might well have believed that since the court had said the state's testimony was the best in the world, it was better than the evidence produced by appellant. That, consequently, the deceased was not the aggressor and the appellant's claim of self-defense untenable.

As to claimed prejudicial remarks of a prosecuting attorney, this court has said in *State v. Douglass*, 35 Ida. 140, 208 Pac. 236:

"In *State v. Tilden*, 27 Ida. 262, 147 Pac. 1056, this court approved the language of Chief Justice Sharkey in *Hare v. State*, 4 How. (Miss.) 187, which might be applied to the alleged misconduct of both the prosecuting attorney and the jury in this case. The rule as there announced is thus stated: 'If the purity of the verdict might have been affected, it must be set aside; if it could not have been affected, it will be sustained.' "

It is conceded that juries are much more apt to be influenced by what the judge says, than by what a prosecutor says. In *Goldstone v. Rustemeyer*, 21 Ida. 703, 123 Pac. 635, the court said:

"It is well known that jurors observe the suggestions and bearing of the judge during the trial, and if they can catch an expression or suggestion of the opinion of the court as to his view of the merits of the case, they are almost sure to reflect that opinion in their verdict."

See, also, *State v. Shuff, supra; People v. Lyons,* 49 Mich. 78, 13 N. W. 365, 367; *State v. Tickel,* 13 Nev. 502, 510; *McMinn v. Whelan,* 27 Cal. 300, 319. Therefore, it must follow that this comment by the court was prejudicial to appellant. (*State v. Harkin,* 7 Nev. 377; *State v. Drew,* (Mo.) 213 S. W. 106; *Feinberg v. People,* 174 Ill. 609, 51 N. E. 798; *Territory v. O'Hare,* 1 N. D. 30, 44 N. W. 1003; *People v. Lyons, supra; State v. Davis,* 136 N. C. 568, 49 S. E. 162; *McKissick v. Oregon Short Line Ry. Co.,* 13 Ida. 195, 89 Pac. 629; *State v. Chambers,* 9 Ida. 673, 75 Pac. 274; 16 C. J., p. 833.)

It will be noticed that the court directed his remarks to the jury; hence the suggestion obviating error as to remarks of the court addressed to counsel, and not to the jury, contained in *People v. Matthew,* 68 Cal. App. 95, 228 Pac. 417, 423, and *State v. Elder,* 130 Wash. 612, 228 Pac. 1016, 1018, and similar cases, are not in point as mitigating the effect of the remarks under consideration. (*State v. Hyde,* 20 Wash. 234, 55 Pac. 49.) Thus *People v. Overacker,* 15 Cal. App. 620, 115 Pac. 756, 759, is clearly distinguishable.

On cross-examination by counsel for appellant of some of the state's character witnesses, they were asked if they had not heard of the deceased's participation in a robbery by force, and other similar actions. The state's objection was sustained. Such questioning was proper, and it was error not to allow such cross-examination. (4 Chamberlayne, The Modern Law of Evidence, p. 4576, sec. 3316; Underhill, Criminal Evidence, 3d ed., p. 182, sec. 141; 1 Nichols, Applied Evidence, pp. 1028, 1029, secs. 139, 140, and cases cited; *State v. Sella,* 41 Nev. 113, 168 Pac. 278.)

In view of the importance of the question of who the aggressor was at the immediate time of the shooting, and the bearing on such question of the reputation of the deceased, the refusal to permit answers to these questions was prejudicial.

Since a new trial must be had, it is unnecessary to pass upon the refusal of the trial court to grant a new trial, or the respective showings in relation thereto.

Judgment reversed and cause remanded for a new trial.

Lee, C. J., and Varian, J., concur.

McNaughton, J., disqualified, did not participate.

BUDGE J., Dissenting.—I am not in accord with the majority opinion which holds that the trial court committed reversible error in making the remarks therein set out. Character witnesses for the appellant testified that they had heard deceased's reputation discussed and that it was bad. Some of the state's witnesses testified that they had heard deceased discussed but had never heard his reputation questioned. Upon the ground that the witnesses had not shown themselves qualified to testify, counsel for appellant objected to the latter testimony and moved that it be stricken. As I read the remarks of the court, I do not think that his language is subject to the construction placed upon it in the majority opinion. The trial court emphatically stated that he was not commenting on whether or not the evidence was true. He said, "I don't know anything about it" (meaning the evidence). "The court's position is that if a man's name is brought up in discussion, the best evidence in the world is the fact that no one questions it." Clearly, the court did not have in mind the evidence that had theretofore been offered but, upon the other hand, had in mind a rule of law. The statements made were not a comment upon the admission or rejection of evidence or an expression from which the jurors might infer the feeling of the court as to the guilt or innocence

of the accused. (*State v. Roland,* 11 Ida. 490–496, 83 Pac. 337.)

In order to be prejudicial, the remarks must have influenced the jury in reaching its verdict. Conceding, without deciding, that the trial court erred in stating the probative value of negative evidence of reputation, it is not, in my opinion, sufficient cause for remanding the case for a new trial. In *State v. Dowell,* 47 Ida. 457, 68 A. L. R. 1061, 276 Pac. 39, it was held that character evidence is never vital to the defense of a criminal case; and that conclusion is particularly persuasive herein for the reason that both prosecution and defense introduced direct evidence of the homicide.

As disclosed by the statement in the majority opinion, the evidence amply warrants the jury's verdict. The killing of the deceased by appellant was a deliberate, premeditated, unjustifiable killing without excuse. This court has repeatedly held that a new trial ought never to be allowed notwithstanding some mistake or even misdirection by the judge provided the reviewing court is satisfied that justice has been done and that, upon the evidence, no other verdict could properly have been found. (*State v. Marren,* 17 Ida. 766, 107 Pac. 933; *State v. Silva,* 21 Ida. 247, 120 Pac. 835.) This rule is based on legislative enactment (C. S., secs. 9084, 9191) and it is our duty to give to the statutes the effect intended by the legislature. These statutes were clearly intended to· avoid the many miscarriages of justice occasioned by the strict adherence to the old rule of presumption that any error is prejudicial. (*State v. Jurko,* 42 Ida. 319, 245 Pac. 685.) In my opinion, in refusing to heed these enactments, the court has taken a backward rather than a forward step in the efficient enforcement of our criminal statutes.

What has been said is equally applicable to the error complained of concerning the trial court's refusal to permit appellant's counsel to cross-examine several character witnesses called by the state regarding an alleged act ·of violence by the deceased. The authorities are uniform that

such cross-examination is permissible solely for the purpose of testing the credibility of witnesses. (30 C. J. 175; Underhill, Crim. Evidence, p. 182.) Since numerous other of the state's character witnesses testified to the deceased's good reputation, I cannot view the credibility of the testimony of the witnesses in question as being sufficiently material as to warrant a new trial.

In my opinion, there is no question as to who was the aggressor at the immediate time of the shooting. Appellant armed himself with a gun, went to the place of business of the deceased and deliberately killed him and no necessity therefor appears. Before the plea of self-defense may be made available, it must appear that the accused had an honest belief in the necessity of taking the life of the deceased.

The judgment should have been affirmed.