551 P.2d 1344

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Russell Lee WHITE, Defendant-Appellant.**

**No. 11829.**

Supreme Court of Idaho.

July 7, 1976.

Gary E. Radke, of Brauner, Fuller, Doolittle & Radke, Caldwell, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., James F. Kile, Asst. Atty. Gen., Gordon S. Nielson, Senior Deputy Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

## ON REHEARING

McFADDEN, Chief Justice.

The previous opinion issued in this case on March 2, 1976, is hereby withdrawn and this opinion is substituted therefor.

Defendant-appellant Russell Lee White (hereinafter appellant), was found guilty by a jury of one count of second degree kidnapping.[1] Judgment of conviction was entered on the verdict and appellant was sentenced to a term not to exceed twenty-five years.[2] This appeal is from the judgment of conviction and from the order of the district court denying appellant's amended motion for a new trial. Defendant alleges error at trial in that the judge improperly commented on the evidence, limited his cross-examination of the complaining witness, and allowed the prosecuting attorney to comment on defendant's silence at the time of arrest. We reverse and remand for a new trial.

Appellant and the victim of the alleged kidnapping, Karen Jean Rose, first became acquainted when they met at Lake Lowell on the afternoon of July 26, 1974. They engaged in friendly conversation and passed the time for several hours. This much was undisputed at trial. However, appellant and Miss Rose differ as to the events that followed.

Miss Rose testified at trial as follows. She and appellant agreed to exchange phone numbers, and he then went to his truck to get a card with the number on it. When he returned to her car he allegedly displayed a knife, threatened her, and forced her to drive him in her car away from the lake. They drove along the river towards Marsing, waited on a road near the river until dark, and then took the Winnemucca-Jordan Valley road south. Appellant struck her when she refused his order to turn off the main road onto a dirt road outside of Jordan Valley; she later did drive the car off the main highway and down a dirt road where appellant made sexual advances towards her.

Following this stop they drove to a Jordan Valley tavern arriving at approximately 11:00 p. m. The two left the car and went inside where each consumed at least one beer. Miss Rose testified that she considered attempting to obtain help at the tavern, but that she was unable to do so. After about half an hour at the tavern, they returned to Nampa. The appellant got out of the car near his home, and Miss Rose proceeded to her parent's home, where she arrived at about 12:45 a. m.

Appellant, on the other hand, testified that the evening excursion with Miss Rose was a mutually agreed upon date. He stated that he and Miss Rose became friendly during the afternoon and that they both desired to continue the relationship into the evening. They agreed to go first to Marsing for a beer, which they drank in a road-

---

1. I.C. § 18–4501 provides in pertinent part: "Kidnapping defined.—Every person who wilfully: 1 Seizes, confines, inveigles or kidnaps another, with the intent to cause him, without authority of law, to be secretly confined or imprisoned within this state, or to be sent out of this state, or in any way held to service or kept or detained against his will * * * is guilty of kidnapping."

I.C. § 18–4503 provides: "Second degree kidnapping when not for ransom.—Every other kidnapping committed shall be kidnapping in the second degree." See I.C. § 18–4502 which essentially defines kidnapping for ransom as kidnapping in the first degree.

2. I.C. § 18–4504(2).

side park. They later went to Jordan Valley at Miss Rose's suggestion after she declined appellant's invitation to go to Winnemucca. Appellant testified that she was free at any time during the evening to leave him and go. He denied that he threatened Miss Rose or forced his attention upon her, and he denied that he had a knife with him at any time. He maintained that Miss Rose initiated the sexual advances and that she became angry and hostile when he was unresponsive.

Appellant was arrested at his home between 2:00 and 3:00 a. m. on the morning of July 27. He testified that he initially was unaware of the nature of the charge, and volunteered to the police that he had an alibi: that he had been with Karen Rose the entire evening. The police informed him that he was being charged with the kidnapping of Miss Rose. Appellant then determined to say no more to the police and he made no further statements to the police at the time of his arrest.

Appellant first assigns error to a remark made by the trial judge in ruling on a prosecution objection to a question asked of the complaining witness by defense counsel. On cross-examination, Miss Rose admitted that she and appellant had stopped at a tavern in Jordan Valley for a ,beer. The appellant was the first to leave the car and at her request he had locked the door on his side when he got out. At this point Miss Rose was sitting in the driver's seat of the car with the car keys; the defendant was out of the car and the door on his side was locked. The complaining witness was then asked why she had not attempted to drive away. She replied that she was scared. Then the following question was asked:

"Q. Have you told the Prosecutor and everybody the whole story in this case?
A. Yes.

Q. Did you tell the police this, that you had an opportunity to drive away?

MR. OWENS: Your honor, I am going to object to that. We don't know—we talk about opportunity to drive away, an opportunity exists in her mind, not in the mind of the Prosecutor or Defense Counsel is not a fact.

COURT: *I don't think there is any evidence she had an opportunity to drive away.* I don't know anything about cars. Some of them you can—you have to lock them with the keys, and one thing and another. I can't say.

I am going to sustain the objection."
[Rptr trans. p. 54.] (Emphasis added.)

Appellant contends the remark was clearly a comment on the weight of the evidence and expressed an opinion of the trial court on an issue which was critical to the guilt or innocence of the defendant. Both Miss Rose and appellant agreed that they had driven together from Lake Lowell, through Marsing, to Jordan Valley and directly back to Nampa. The critical question before the jury was: had the complaining witness willingly allowed the defendant to accompany her that evening, or had she been threatened and forced to drive him along that route? If Miss Rose had chosen to pass up an opportunity to escape, that would be important circumstantial evidence bearing on the issue. Appellant maintains that the trial judge, in effect, answered the question for the jury by his comment.

Respondent argues that the remark cannot be interpreted as expressing an opinion as to the evidence. Rather, respondent argues that the judge intended only to make the ruling clear and elucidate the issue under consideration. Such remarks are not considered error. *State v. Polson*, 81 Idaho 147, 339 P.2d 510 (1959); *State v. Rutten*, 73 Idaho 25, 245 P.2d 778 (1952); *State v. Neil*, 58 Idaho 359, 74 P. 2d 586 (1937).

Remarks or comments by a trial judge which would tend to prejudice either of the parties to a jury trial are proscribed because of the great possibility that such an expression will influence the jurors. *State v. Rutten, supra; State v. Linebar-*

*ger,* 71 Idaho 255, 232 P.2d 669 (1951); *State v. Miller,* 60 Idaho 79, 88 P.2d 526 (1939); Bell, Handbook of Evidence for the Idaho Lawyer (2d ed. 1972), pp. 10–11. Remarks which are prejudicial are those which constitute comment on the weight of the evidence, *State v. Polson, supra; State v. Ward,* 51 Idaho 68, 1 P.2d 620 (1931); *Kinzell v. Chicago, etc., Ry. Co.,* 33 Idaho 1, 190 P. 255 (1920); or indicate an opinion of the court as to the guilt or innocence of the defendant, *State v. Polson, supra; State v. Brewer,* 73 Idaho 191, 249 P.2d 189 (1952); *State v. Rutten, supra.* As this court stated in *State v. Polson,*

> "the true tests, to determine if the remarks of a trial judge are prejudicial, are whether those remarks constitute comment on the weight of the evidence, *State v. Ward,* 51 Idaho 68, 1 P.2d 620; * * * ." 81 Idaho 147, 162, 339 P.2d 510, 519 (1959).

■ The comment made by the trial judge in ruling on the prosecution objection was made in such terms as to express his belief that certain evidence critical to the defense position was not present. The statement "I don't think there is any evidence she had an opportunity to escape" was not rendered less noxious merely because it was made to give clarity to a ruling.[3] The statement went beyond the bounds of mere elucidation; the statement constituted expression of opinion about the evidence in the presence of the jury. When, as here, a statement reflects the court's opinion as to the evidence in a clear and unambiguous manner, and when it relates to a critical issue in the case, then that statement constitutes prejudicial error.

■ As his second assignment of error appellant alleges that the trial court unduly restricted and limited cross-examination of the complaining witness[4] and that in this he was denied his constitutional right to confrontation. Defense counsel was attempting to challenge the credibility of the complaining witness by exploring a possible source of motivation that may have led her to tell parents and police that she had been kidnapped. The trial judge objected on his own motion to this line of questioning.[5]

Defense counsel attempted to cross-examine Miss Rose on the effect of a recent pregnancy and miscarriage on her relationship with her parents. Appellant maintains that the relationship with the parents was critical. At the time of the incident, Miss

---

3. The only remedial instruction given with reference to the Court's comment was that portion of Instruction No. 16 which read "You must disregard any expression of the court in passing on such matters unless otherwise expressly instructed by the court during the course of the trial." This instruction, given as a portion of a lengthy instruction at the end of the evidence, was not sufficient to cure the prejudice created by the comment at the time that comment was made.

4. "[Defense counsel] Q. Did you tell Russ anytime at all that night, * * * that your relationship with your parents had—had been strained lately?

[Witness] A. Yes.

Q. And why was that?

A. Conversation.

Q. Okay, had your relationship been strained with them?

A. No.

Q. Because of the fact that you were pregnant, that didn't strain your relationship?

A. No.

Q. Did you tell him that?

A. Yes.

Q. Did this upset your parents when you got pregnant?

A. Yes.

[Court] Oh well, you are getting pretty far afield, Mr. Radke. If counsel for the State is not going to object, I am going to.

[Defense counsel] Okay."

5. It has been argued that defense counsel seemingly accepted the court's ruling, and did not attempt to develop a record of the anticipated answers, in an effort to gain the trial court's approval of the line of questioning. Generally, it is necessary that counsel offer proof if the issue is to be reviewed on appeal. However, where the question shows its own purpose and makes apparent the answer, no offer of proof is necessary, Bell, Handbook of Evidence for the Idaho Lawyer, 19–20, (2d ed. 1972), and cases cited therein. This court is satisfied that the questions in the instant case fall within this exception.

Rose was staying at home with them; she was expected home at suppertime, but, because of the drive with appellant, did not arrive until 1:00 a.m. the following morning. If the relationship was already strained, and if Miss Rose was concerned about this, then she may have anticipated that the late arrival would have serious detrimental effect on the relationship, and may have grasped for an excuse for the tardiness. Appellant contends that she fabricated the kidnapping in order to avoid a confrontation with her parents. Thus, cross-examination on this issue was important in that it pertained to a possible motivation for the difference in the stories told by Miss Rose and the appellant.

Impeaching the credibility of the complaining witness' testimony by showing that she had a motive to accuse him of kidnapping was a legitimate and constitutionally protected means of attempting to discredit her testimony. As was stated in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974),

"A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959)." 415 U.S. at 316, 94 S.Ct. at 1110.

See, U.S.Const. amends VI, XIV; *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *State v. Delawder*, 28 Md.App. 212, 344 A.2d 446 (1975). This court has consistently held that where a defendant is seeking on cross-examination to show bias or test the credibility of the complaining witness, the trial court should allow considerable latitude. See, e. g., *State v. Storms*, 84 Idaho 372, 375–6, 372 P.2d 748 (1962). The trial judge, on his own motion, cut off appellant's cross-examination on an important credibility issue before the issue could be properly developed;[6] this was error.

In his third assignment of error, appellant argues that the prosecutor improperly sought to use his post-arrest and pre-trial silence to raise an inference of guilt against him and to impeach his credibility.[7] Appellant asserts he was prej-

6. Counsel for respondent contends that appellant had ample opportunity to develop the credibility issue, and that it was not prejudicial to exclude the questions. At the time defense counsel was stopped by the trial judge, he had elicited the fact of the strain in the relationship, but had not explored the extent of the strain, nor the effect of the strain on Miss Rose's perception and motivations. While defense counsel later did again refer to the existence of a strain (Rptr. Tr. p. 71) he was never allowed to develop that point. The standard for review of a denial of confrontation right was set forth in *Davis v. Alaska, supra*: "Petitioner was thus denied the right to effective cross-examination which ' "would be constitutional error of the first magnitude and *no showing of want of prejudice would cure it.*" ' " 415 U.S. at 318, 94 S.Ct. at 1111. (Emphasis added.) See also, *State v. DeLawder, supra*. Appellant was denied an opportunity to fully develop the issue, and in light of the language in *Davis*, we find prejudice.

7. Direct examination of appellant, in pertinent part:
"[Defense counsel:] Q. Why are you here today, Russ, do you know?
A. I was laying—I went home and was laying in bed and the cops came in and arrested me. They said I kidnapped somebody. * * *.
Q. Did you suggest anything to the cops at that time?
A. I told them, look—look at their hands, I don't care what you are going to charge me with, I said, I have an alibi. I said, I was with somebody all night. They said who, and I said Karen. They said, 'well that's who we are arresting you for kidnapping.'
Q. Did you talk about the bartender to them?

udiced by this violation of his constitutional right to remain silent.[8] Respondent argues that by testifying to statements made to police on direct examination, appellant opened up the field for questioning and waived his privilege to prohibit the prosecution from delving into subsequent silence.

 If a prosecutor is allowed to introduce evidence of silence, for any pur-

A. No. When they said something about kidnapping, I just told them that I didn't want to talk to them about something that carriers twenty-five years."

Cross examination of appellant, in pertinent part:

"[Prosecutor] Q. Did you make a statement to the police when they came and got you?

A. I think that I made a couple of them. I—I only remember saying something about that I was with somebody.

Q. And when you found out what this whole thing was about, did you make any statement to the police?

A. I didn't want to talk to them.

Q. You didn't want to talk to them?

A. (No response)

Q. Why?

A. Because I have—I had experience with police before, and I just found out that they—they don't actually always deal fair with one, or honestly, as far as that goes—

Q. You mean that is your opinion, right?

A. No, that is my experience.

Q. This is based—the police are out to get you?

A. No.

Q. They just aren't fair and honest?

A. In one particular case, they weren't. Since then, I just don't care to deal with them.

Q. I see, so you have just sort of sat with your tongue in your cheek until this came to trial; is that correct?

A. No, I explained it fully.

Q. To who?

A. My attorney.

Q. Why didn't your explain it to the police?

A. I didn't care to.

Q. So you and your attorney kept it a secret?

A. It's no secret.

Q. It has been a secret until today, hasn't it?

A. No, he has known all of the details that there is to be known.

\* \* \*

Q. Well, I mean you sat by without saying a word about it until today, so I kind of wondered if maybe there was some reason—

A. You are totally wrong. I did say something about it.

Q. Well, I should say, you didn't say anything about it besides anybody—to anybody besides your counsel; right?

A. Isn't that the correct thing to do?

Q. Well, I would think that you might want to have it known beyond that range.

A. I told him—that guy with a Lieutenant were investigating that case. I told them that I would explain the whole thing if they wanted to hear it. If they went out and talked to the bartender, if they really thought that gal was kidnapped. I explained to the police to go out and talk to the bartender, and if they still thought then that she was kidnapped, then I would be glad to tell them anything that they wanted to do.

They wouldn't go talk to the bartender, as far as I know.

Q. As far as you know?

A. (No response.)

Q. After they talked to the bartender, then you would talk to them; was that a condition that you specified—

A. They never notified me that they talked to the bartender.

Q. What?

A. They never notified me that they did talk to the bartender.

Q. Oh, but if they had then you would have talked to them?

A. More than likely.

Q. I see, and so you just waited until today for them to either tell you that they had talked to the bartender, or just forget about it?

A. I—I don't understand your question.

[Prosecutor] I don't have any further questions of this witness."

8. Defense counsel did not object to this testimony at trial, and ordinarily the error would not be considered on appeal. However, the court will review fundamental error on appeal even if no adequate objection is interposed at trial. *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971).

Respondent argues that the objection may have been intentionally by-passed as a matter of strategy, and that because a determination of this question requires a factual finding, we should affirm and leave defendant to post-conviction remedies. However, inference of strategic by-passing of constitutional objections occurs only when there is strong indication that counsel knew of the possible objection and chose to ignore it. *Estelle v. Williams*, —— U.S. ——, 96 S.Ct. 1691, 48 L.Ed. 2d 126, 44 L.W. 4609 (1976). Otherwise, inference of waiver is to be avoided. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). There is no such evidence in this case.

pose, then the right to remain silent guaranteed in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), becomes so diluted as to be rendered worthless.[9] It is unclear whether the purpose and effect of the prosecutor's questions in this case were to raise an inference of guilt or to impeach appellant's testimony. In either case, the questions were improper.

■ It is clearly erroneous to allow evidence of postarrest silence at trial for the purpose of raising an inference of guilt. *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L.Ed.2d 106 (1965); Comment, Impeaching a Defendant's Trial Testimony by Proof of Post Arrest Silence, 123 U. of Pa.L.Rev. 940, 943 n. 16 (1975). As to the use of such testimony for impeachment, the United States Supreme Court recently held in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, 44 L.W. 4902 (1976), that,

"the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." 96 S. Ct. 2240, 2245, 44 L.W. 4902, 4904.[10]

■ Respondent argues that the appellant waived his protection from prosecutorial comment by opening the field on direct examination. We do not believe this is true. Appellant testified on direct examination as to the few statements he did make at the time of his arrest. Under the Miranda doctrine, however, he had a right to make some statements, then invoke the right to silence. Consistent with that holding, he may also testify to the statements made at trial, without opening up the silence on cross-examination. While it is normally true that a defendant who takes the stand exposes himself to cross-examination, the evidentiary scope of cross-examination is still limited by the constraints and protections of the constitution. Only that cross-examination which is not constitutionally prohibited is proper. See, *State v. Dunn*, 91 Idaho 870, 434 P.2d 88 (1967). Here, the constitutional prohibition against the use of silence supersedes the otherwise proper latitude of impeachment on cross-examination.

The prosecutor's questions as to defendant's postarrest silence were improper, and constituted fundamental error.

The effect of all of the errors which occurred was that appellant was deprived of a fair trial. The judgment of conviction is *reversed* and the cause *remanded* for a new trial.

DONALDSON, BAKES and BISTLINE, JJ., concur.

SHEPARD, J., concurs in the result.

---

9. The Maryland Court has been particularly incisive in describing the effect of allowing such testimony to be admitted, holding in *Burko v. State*, 19 Md.App. 645, 313 A.2d 864 (1974), that "Such tactics, if allowed would have cloaked the precepts of Miranda in an armour of gauze." In *Sutton v. State*, 25 Md.App. 309, 334 A.2d 126 (1975), they noted that in attempting to comment on postarrest silence at trial "The State has beaten the shield of Miranda into a sword, and then used it as a weapon against the defendant."

10. The vast majority of courts which have considered this issue have reached the same result. *United States v. Anderson*, 162 U.S. App.D.C. 305, 498 F.2d 1038 (1974); *Johnson v. Patterson*, 475 F.2d 1066 (10th Cir. 1973); *United States v. Semensohn*, 421 F. 2d 1206 (2d Cir. 1970); *Fowle v. United States*, 410 F.2d 48 (9th Cir. 1969); *United States v. Brinson*, 411 F.2d 1057 (6th Cir. 1969); *Sutton v. State*, 25 Md.App. 309, 334 A.2d 126 (1975); *Commonwealth v. Bennett*, 317 N.E.2d 834 (Mass.App.1974); *Miles v. State*, 525 P.2d 1249 (Okl.Cr.1974); *Gabrielson v. State*, 510 P.2d 534 (Wyo. 1973); *People v. Bobo*, 390 Mich. 355, 212 N.W.2d 190 (1973); *State v. Elmore*, 467 S.W.2d 915 (Mo.1971); State v. Anderson, 110 Ariz. 238, 517 P.2d 508 (1973); *Hines v. People*, 179 Colo. 4, 497 P.2d 1258 (1972); *State v. Griffin*, 120 N.J.Super. 13, 293 A.2d 217 (1972); *Reid v. Commonwealth*, 213 Va. 790, 195 S.E.2d 866 (1973); Comment, Impeaching a Defendant's Trial Testimony, *supra*.