IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 35410

| STATE OF IDAHO, | ) | |
| :--- | :--- | :--- |
| | ) | 2009 Opinion No. 77 |
| Plaintiff-Respondent, | ) | |
| | ) | Filed: December 2, 2009 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| EUGENE RAY COBELL, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Michael E. Wetherell, District Judge.

Judgment of conviction and concurrent unified life sentences, with minimum periods of confinement of ten years, for rape and penetration by a foreign object, affirmed.

Molly J. Huskey, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

———————————————————————

MELANSON, Judge

Eugene Ray Cobell appeals from his judgment of conviction and concurrent unified life sentences, with minimum periods of confinement of ten years, for rape and penetration by a foreign object.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Cobell, a seventy-two-year-old man, was visiting the home of his niece and his grandniece, a twenty-year-old woman.  One evening, after the other members of the family went to bed, Cobell and his grandniece remained on the couch.  The grandniece fell asleep with her head on Cobell's shoulder and was awakened by Cobell fondling and kissing her.  When she sat up alarmed, Cobell forced her to the ground, removed her clothing, performed oral sex on her, penetrated her with his penis, and digitally penetrated her anus while pulling her head back by

1

her pony tail. The victim reported the incident to her mother. When her mother confronted Cobell, he initially responded that he did not do anything and later admitted that he and the victim were just being friendly but that he could not have raped her because he was impotent. The police were called and an officer asked Cobell some preliminary questions. After some vague responses, Cobell eventually told the officer that he had his arm around the victim, she fell asleep and he kissed her on the neck. He denied any sexual contact with the victim.

Cobell was charged with rape, I.C. § 18-6101, and penetration by a foreign object, I.C. § 18-6608. At trial, the victim testified that Cobell sexually assaulted her. However, Cobell testified that the entire encounter was consensual and began with a kiss which then escalated to more passionate behavior. The jury found Cobell guilty of both charges. The district court sentenced Cobell to concurrent unified terms of life, with minimum periods of confinement of ten years. Cobell appeals.

## II.

## ANALYSIS

### A.    Cross-Examination

Cobell argues that his Fifth Amendment right to remain silent was violated when the prosecutor cross-examined him concerning his failure to relate to the victim's family and police officers on the night of the assault the version of events to which he testified at trial. The state contends that the district court properly allowed it to cross-examine Cobell about inconsistencies between his trial testimony and previous statements he made to the victim's mother and the investigating officer. Cobell replies that the state misconstrues his argument and that he "does not assert that it was improper for the State to question [him] about statements made on the night in question, either to family of the responding officers, but that it was improper to use this later post-arrest silence to infer his guilt."

A police report in the record discloses that, after an interview with detectives at the police station, Cobell was read his *Miranda*[1] rights and signed a waiver form. He told detectives that he did not wish to speak with them because he thought it would not help him. The report states that Cobell was then advised that he was being placed under arrest for rape. Aside from Cobell's concession that he is only challenging the use of his post-*Miranda* silence, the timing of the

---

[1]    *See Miranda v. Arizona*, 384 U.S. 436 (1966).

recitation of *Miranda* rights is important. In *Doyle v. Ohio,* 426 U.S. 610 (1976), the Court held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle,* 426 U.S. at 619. The rationale for this rule is that "*Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him. *Anderson v. Charles*, 447 U.S. 404, 407-08 (1980). The Court then later explained:

> The "implicit assurance" upon which we have relied in our *Doyle* line of cases is the right-to-remain-silent component of *Miranda.* Thus, the Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest or after arrest if no *Miranda* warnings are given. Such silence is probative and does not rest upon any implied assurance by law enforcement authorities that it will carry no penalty.

*Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993) (citations omitted). However, the Idaho Supreme Court has held that even pre-arrest and pre-Miranda silence cannot be used solely for the purpose of implying guilt. *State v. Moore*, 131 Idaho 814, 820-21, 965 P.2d 174, 180-81 (1998).

At trial, the officer who first responded to the home testified that Cobell told him that nothing had happened. After additional questioning by the officer, Cobell conceded to kissing the victim on the neck. The victim's mother testified that Cobell told her that he was just being friendly and that he "can't do nothing." Cobell testified that he suffered from impotence and, when confronted by the victim's mother and accused of rape, he responded that he could not have committed the act. He also testified that the encounter was consensual beginning with the victim asking him to kiss her and then escalating to more intimate contact. The following exchange occurred during cross-examination:

> Q. Okay. And on this night [the victim's mother] came to you and she said, "You raped my baby" didn't she?
> A. Yes.
> Q. And you didn't take the opportunity to explain what really happened; did you? You didn't tell her; did you?
> A. Would you repeat?
> Q. You never told her that it was [the victim] who came on to you; did you?
> A. I didn't get a chance.
> . . . .

Q.      All right.  And when law enforcement came to the house and they told you that they were there because [the victim] had accused you of sexually assaulting her, you didn't tell them that story either; did you?

A.      I don't understand.

Q.      You never told the police this story; have you?  Yes or no?

A.      No.

Q.      And when you went down and were taken to the detective's office and were given an opportunity to explain your side of the story, you never offered up any of this; did you?

A.      No.

Q.      So the same--the story that you want this jury to believe, that would exonerate you if it was quote "consensual," you didn't tell anybody about it that night; did you?

A.      No.

. . . .

Q.      So when you were being led away in handcuffs at four in the morning and taken to jail, you didn't think then would be a good time to set the record straight?  That didn't occur to you?

A.      No.

. . . .

Q.      It never occurred to you to tell the police that this was just a big misunderstanding, did it?

A.      My hope--

Q.      It is really just a yes or no question, sir.  Did it occur to you to tell them?

. . . .

A.      I don't know.

[COUNSEL]:      Judge, I'm going to object.  The defendant has a right to remain silent upon questioning, upon being with the police and remaining silent.  And Counsel is badgering him about that.

[COURT]:      I will overrule the objection.  When the defendant chooses to take the witness stand, he waives his right to be silent and the State can pursue the reason that he chose to remain silent on the night of his arrest.  So I don't believe it is improper cross-examination and I will overrule the objection.

A defendant's decision to exercise his or her right to remain silent cannot be used at trial for the purpose of inferring guilt.  *Moore*, 131 Idaho at 820-21, 965 P.2d at 180-81. Nevertheless, the prosecution may use the defendant's silence for the limited purpose of rebutting or contradicting a defendant's testimony.  *See id.* at 821, 965 P.2d at 181; *State v. Dougherty*, 142 Idaho 1, 4, 121 P.3d 416, 420 (Ct. App. 2005).  In this case, the only question asked by the prosecutor concerning Cobell's silence after receiving the *Miranda* warnings was the question regarding Cobell's failure to take the opportunity to explain the consensual nature of

4

his encounter with the victim at the police station. Cobell testified during direct examination concerning his behavior in speaking with police. When counsel asked him if he remembered speaking with police, Cobell responded:

> A. When they asked me what happened I still didn't really know the situation I was in. So I didn't want to really say anything because I didn't know, you know, as far as I was concerned we had --
> Q. Let me interrupt you there. So the answer is you didn't say anything?
> A. Didn't.
> Q. Okay.
> A. I did respond to some of their questions, but when they tried to get me to talk about what happened I didn't feel like telling them anything about it because I didn't know what had transpired and where I was -- my situation.

Cobell's testimony opened the door for the prosecution to cross-examine him on this subject. However, such cross-examination is limited to the narrow purpose of rebutting *that* particular testimony. *See Dougherty*, 142 Idaho at 4, 121 P.3d at 420. Cobell did not testify that he told detectives that the sexual encounter was consensual at the police station, only that he remained silent because he did not know what situation he was in. Therefore, it was error for the district court to allow the prosecutor to cross-examine Cobell using his post-*Miranda* silence to the detectives at the police station in order to impeach his testimony that the encounter was consensual.

Our inquiry does not end with our conclusion that the prosecutor's question regarding Cobell's post-*Miranda* silence at the police station violated his due process rights. Commentary on a defendant's right to remain silent, if determined to be constitutional error, is subject to the harmless error analysis. *State v. Tucker*, 138 Idaho 296, 299, 62 P.3d 644, 647 (Ct. App. 2003). Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). To hold an error harmless, this Court must declare a belief, beyond a reasonable doubt, that there was no reasonable possibility that the evidence complained of contributed to the conviction. *State v. Sheldon*, 145 Idaho 225, 230, 178 P.2d 28, 33 (2008).

In this case, the victim testified that Cobell sexually assaulted her. Evidence was presented that she had injuries consistent with her version of the events. Family members testified as to the events following the incident, including the victim's highly-emotional state. This was corroborated by the police who testified regarding their encounters with Cobell and the victim. Cobell testified that the encounter was consensual and, furthermore, he could not have raped her because he was impotent. Cobell's wife testified that he was impotent. There was substantial evidence from which the jury could properly conclude that Cobell committed the sexual assault. The prosecutor's cross-examination about Cobell's failure to claim the conduct was consensual during his discussion with police came only after Cobell had already admitted in direct examination that he had chosen not to talk to police about the incident. Additionally, the problematic question concerning Cobell's silence at the police station fell within a long string of permissible questions attacking the credibility of his testimony that the sexual encounter was consensual. These other questions highlighted inconsistencies in Cobell's testimony with the version related on the night in question, including his pre-*Miranda* failure to claim that the encounter was consensual. The prosecutor did not dwell on Cobell's post-*Miranda* silence, but continued with permissible questioning about Cobell's failure to claim that the encounter was consensual to the victim's mother and the officers who first arrived at the scene. Therefore, we are convinced beyond a reasonable doubt that the jury would have found Cobell guilty of rape and penetration with a foreign object even absent the prosecutor's passing question implicating his post-*Miranda* silence at the police station. Accordingly, the error was harmless.

Cobell also claims that the district court erred by holding that, when he elected to testify, he waived his right to be silent and the state could pursue the reason that he chose to remain silent. Our holding addresses the use of Cobell's silence, and we need not further address this argument. To the extent that Cobell argues that the district court's statement was, in effect, an additional jury instruction informing the jury that they were allowed to consider his silence to infer guilt, his argument is without merit.

**B.     Closing Argument**

Cobell argues that the state committed prosecutorial misconduct by using his post-*Miranda* silence during cross-examination and further commenting on Cobell's silence and misstating the evidence during closing argument. The state responds that the prosecutor's questioning was not improper, that the prosecutor's reference to the impeachment of Cobell

6

based on his inconsistent stories was not improper, and that a single statement during closing argument incorrectly reiterating the evidence does not constitute fundamental error or demand a new trial. It is undisputed that Cobell did not object to any of the state's closing argument.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

When there is no contemporaneous objection, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in fundamental error. *Id.* Prosecutorial misconduct rises to the level of fundamental error when it is calculated to inflame the minds of jurors and arouse prejudice or passion against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence. *State v. Kuhn*, 139 Idaho 710, 715, 85 P.3d 1109, 1114 (Ct. App. 2003). However, even when prosecutorial misconduct has resulted in fundamental error, the conviction will not be reversed when that error is harmless. *Field*, 144 Idaho at 571, 165 P.3d at 285. The test for whether prosecutorial misconduct constitutes harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct. *State v. Pecor*, 132 Idaho 359, 368, 972 P.2d 737, 746 (Ct. App. 1998).

When the defendant did not object at trial, our inquiry is, thus, three-tiered. *See Field*, 144 Idaho at 571, 165 P.3d at 285. First, we determine factually if there was prosecutorial misconduct. If there was, we determine whether the misconduct rose to the level of fundamental error. Finally, if we conclude that it did, we then consider whether such misconduct prejudiced the defendant's right to a fair trial or whether it was harmless.

Cobell raised a contemporaneous objection to the use of his post-*Miranda* silence during cross-examination. However, we have already determined that any violation of Cobell's due process rights in that respect was harmless. Therefore, even if the prosecutor's reference to Cobell's post-*Miranda* silence constituted prosecutorial misconduct, it was harmless. Cobell's next argument is that the following portion of the state's closing argument was misconduct because it "presented the theme that Mr. Cobell must be guilty because of his earlier silence and invocation of his Fifth Amendment rights." During closing, the state argued:

When [the victim's mother] approaches [Cobell] and tells him, "What did you do to my daughter? You raped her," it is significant, ladies and gentleman, that the defendant said, "I can't." He didn't say, "I didn't, I didn't rape her". Why is that significant? It is not just the nuance of the words because the defendant himself from the stand is testifying that what he engaged in he doesn't really consider sex. Because apparently he has decided that unless it is full penetration, penile-vaginal penetration, that that doesn't qualify.

So when he says "I can't versus "I didn't," that is not a slip. That is not a small nuance. It is a huge thinking error in his head.

When law enforcement comes and they confront him, they tell him immediately--he is being accused of sexually assaulting his niece, [the victim], who is right across the hall crying hysterically.

. . . .

*But for the defendant to say to you today through his attorney that he didn't have to explain anything to this family, that he didn't have to explain anything to the police, but just to simply come here today and give you this dilly of a story, is pretty incredible.* To want to comment that there is a divide in this family with an aisle down the middle and to express how painful that may be, when he has an opportunity to explain what? That he engaged in an incestual relationship with your daughter? And that somehow that would be okay?

Credibility is huge in this case. But ladies and gentlemen, again, you don't leave that at the door. Where is his shame and his humiliation when he takes that stand and tells you this story in this fashion?

*He never protests, "I didn't do it." He never protests and says "I didn't rape [the victim]."* He says, "I can't," because he is confusing intent with ability.

(Emphasis added).

Relying on the italicized portions of the state's closing argument, Cobell argues that the prosecutor committed misconduct by referencing the exercise of his right to remain silent. A defendant's exercise of his right to remain silent cannot be used for the purpose of implying guilt. *Moore*, 131 Idaho at 820-21, 965 P.2d at 180-81. However, rather than attempting to imply guilt from Cobell's reliance on his right to remain silent, it is clear when read in context that the prosecutor was referencing the impeachment of Cobell's story based on his different responses--the response to the victim's mother and the investigating officer when Cobell stated that he did not rape the victim and he could not have raped her compared with the version Cobell offered at trial that the encounter was consensual. This argument was not improper.

Finally, Cobell argues that the prosecutor misstated the evidence offered at trial when she commented during closing argument that "you have nothing in front of you to believe that [Cobell] in fact didn't penetrate [the victim]. He has a problem with erectile dysfunction, but it

is situational." We agree that the prosecutor misstated the evidence or at least invited the jury to speculate that Cobell's erectile dysfunction was situational. Cobell and his wife testified about his impotence, but neither person stated it was situational. Similarly, the victim testified that Cobell was flaccid during the course of the sexual encounter. There was no testimony offered at trial that Cobell's impotence was situational. However, we conclude that this one-time misstatement of the evidence does not rise to the level of fundamental error. Cobell is not entitled to a new trial based on his allegations of prosecutorial misconduct.

## C. Cumulative Error

Cobell argues that, even if the individual errors in his case are harmless, combined they amount to cumulative error and demand a new trial. The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's right to due process. *Moore*, 131 Idaho at 823, 965 P.2d at 183. The presence of errors alone, however, does not require the reversal of a conviction because, under due process, a defendant is entitled to a fair trial, not an error-free trial. *Id.* The slight errors that we have found do not convince us that Cobell's trial was unfair. Accordingly, we decline to grant him a new trial on the basis of the cumulative error doctrine.

## D. Sentence Review

The district court sentenced Cobell to concurrent unified life sentences, with minimum periods of confinement of ten years, for the crimes of rape and penetration by a foreign object. Cobell argues that, given his lack of criminal record, his age, his health problems and his support from family and friends, the district court abused its discretion by imposing such sentences.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650

P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

The district court at sentencing acknowledged Cobell's age, his health problems, his lack of a criminal record, and the support he had of family and friends. However, the district court determined that Cobell's conduct, the impact his actions had and will continue to have on the victim, and his failure to take responsibility mandated imprisonment. The district court properly weighed the mitigating factors in Cobell's case, and we cannot conclude that it abused its discretion in imposing concurrent unified life sentences, with minimum periods of confinement of ten years, for the crimes of rape and penetration by a foreign object.

## III.

## CONCLUSION

The district court erred by allowing the prosecutor to question Cobell regarding his post-*Miranda* silence at the police station. However, we conclude beyond a reasonable doubt that the jury would have found Cobell guilty even without the erroneous question. Therefore, the error was harmless. Similarly, any error committed by the state during closing argument did not rise to the level of fundamental error. Cobell has not demonstrated that any errors committed during his trial warrant a new trial pursuant to the doctrine of cumulative error. Finally, Cobell has failed to demonstrate that the district court abused its discretion in sentencing him to concurrent unified life sentences, with minimum periods of confinement of ten years, for the crimes of rape and penetration by a foreign object. Accordingly, Cobell's judgment of conviction and sentences for rape and penetration by a foreign object are affirmed.

Chief Judge LANSING and Judge GRATTON, **CONCUR.**