**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35755**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2010 Unpublished Opinion No. 700** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: November 5, 2010** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **GARRETT A. DIGIALLONARDO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Judgment of conviction for burglary, <u>vacated</u> and <u>remanded</u>.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Robyn A. Fyffe argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

_____

GUTIERREZ, Judge

Garrett A. Digiallonardo appeals from his judgment of conviction upon a jury verdict finding him guilty of burglary. For the reasons set forth below, we vacate the judgment of conviction and remand for further proceedings.

**I.**

**FACTS AND PROCEDURE**

At approximately 10:30 p.m. on March 4, 2008, an assistant manager at Domino's Pizza in Jerome, Carol Jones, and the lone other employee, Jamie Ceja, went behind the building for a cigarette break while in the process of closing the restaurant for the evening. Jones sat in the driver's seat of her vehicle, parked just outside the back door, and Ceja sat in the backseat. The back door of the restaurant was open and Jones had her windows down.

After a short time, the women heard a car approach, two doors slam, and two men approach the restaurant. The men stopped to pull masks or bandanas over their faces before

1

entering the back door. Jones testified that one of the men was wearing a gray hooded sweatshirt and was carrying a gun and the other was wearing dark clothing. She rolled up her car windows and instructed Ceja to call 911. Jones watched as the men entered the restaurant. The man in the gray sweatshirt went directly to the office. The other man went out of sight, but then ran out the back door toward the vehicle in which he came, without looking at the women. She then stated that the man with the weapon exited the building, stopped at the vehicle and she asked him, "What do you want?" He reached for the door handle, and Jones told him it was locked. The man said something to her, which she could not decipher because it was muffled, and then pointed the rifle at her face. Jones started her vehicle and began backing it up. The man ran toward his vehicle and the perpetrators left, with the women following them for a short distance and Ceja describing the incident to dispatch. The women returned to the store where they discovered that the men had not taken anything, including any of the approximately $1,700 cash that was accessible or in plain sight at the time. Both employees told police the perpetrators were Hispanic, driving a silver Honda, one had a shotgun, and both had either bandanas or gorilla masks over their faces.

At approximately 10:47 p.m., an officer stopped a silver two-door Honda Civic traveling out of Jerome County into Twin Falls County. Digiallonardo was the driver and Ramiro Ramirez was in the passenger seat. After two officers arrived to assist, Digiallonardo and Ramirez were pulled from their vehicle at gunpoint, handcuffed, and placed in patrol cars. Subsequently, the Domino's employees were instructed to drive to the scene, where they viewed the men's vehicle and affirmed that while they had not seen their faces, Digiallonardo and Ramirez were similar in height and build to the men they had seen at Domino's. Jones also identified a gray hooded sweatshirt found in the vehicle as the same as that worn by one of the perpetrators.

Digiallonardo and Ramirez were charged with burglary, Idaho Code § 18-1401, aiding and abetting aggravated assault, I.C. §§ 18-901, 18-905, 18-204, and aiding and abetting attempted robbery enhanced by the use of a firearm, I.C. §§ 18-6501, 18-6502, 18-204, 19-2502. The men were tried in a joint trial, after which the jury acquitted them of the aiding and abetting charges, but found them guilty of burglary. The court imposed a unified sentence of ten years imprisonment with five years determinate and retained jurisdiction for 180 days, after which it placed Digiallonardo on probation for ten years. Digiallonardo now appeals.

2

## II.

## ANALYSIS

Digiallonardo asserts that the district court erred in allowing the state to elicit testimony of his refusal to talk to police at the scene of the arrest and contends that the error was not harmless. The state concedes that allowing the state to elicit testimony regarding Digiallonardo's pre-*Miranda*[1] silence was error, *see State v. Moore*, 131 Idaho 814, 820-21, 965 P.2d 174, 180-81 (1998); *State v. Timmons*, 145 Idaho 279, 290-91, 178 P.3d 644, 655-56 (Ct. App. 2007); thus, we are left to determine whether it constituted reversible error or was harmless. Since we conclude this issue is dispositive, we do not reach the remaining issues advanced by Digiallonardo on appeal.

The transcript of the relevant trial proceedings (held outside the presence of the jury) indicates that the state intended an arresting officer to testify that when he questioned the defendants after they were removed from their vehicle and placed in a patrol car, Digiallonardo responded that he did not want to talk and requested a lawyer. The officer would then testify that when he asked Digiallonardo why he wanted a lawyer, since the officer had not asked him any questions yet and had not even told him why he had been stopped, the defendant replied that he had heard some "stuff" on the police car radio and wanted a lawyer "right now." Upon objection by Digiallonardo, the district court excluded any reference to his request for counsel but allowed testimony as to his other statements--seemingly with defense counsel's acquiescence.[2] The error then occurred at trial when the officer testified that after he approached Digiallonardo and asked him to exit the patrol car, Digiallonardo immediately indicated that "he didn't want to talk to me." The officer continued:

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]     The record seems to indicate that Digiallonardo's counsel objected only to the introduction of evidence of Digiallonardo's invocation of his right to counsel and not to introduction of evidence regarding his pre-*Miranda* silence, thus indicating that the issue is not preserved for appeal. However, even absent objection, such reference to a defendant's silence may constitute fundamental error reviewable for the first time on appeal. *See State v. Tucker*, 138 Idaho 296, 298, 62 P.3d 644, 646 (Ct. App. 2003). We ascertain, and the state has not argued differently, that this remains true under the newly articulated fundamental error standard in *State v. Perry*, ___ Idaho ___, ___ P.3d ___ (July 23, 2010) (reh'g pending).

I did ask him why he would make the comment why he didn't want to speak with me. In which he told me that he overheard a conversation on my patrol . . . car radio indicating the event that happened in Jerome and the connection of why we had stopped him.

Commentary on a defendant's right to remain silent, if determined to be constitutional error, is subject to the harmless error analysis. *State v. Cobell*, 148 Idaho 349, 353, 223 P.3d 291, 295 (Ct. App. 2009); *State v. Tucker*, 138 Idaho 296, 299, 62 P.3d 644, 647 (Ct. App. 2003). Error is not reversible unless it is prejudicial. *Cobell*, 148 Idaho at 353, 223 P.3d at 295; *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See Cobell*, 148 Idaho at 353, 223 P.3d at 295; *State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005).

Recently in *State v. Perry*, ___ Idaho ___, ___ P.3d ___ (July 23, 2010) (reh'g pending), the Idaho Supreme Court articulated the applicable harmless error test. The Court specifically noted that while in cases of objected to error, the state has the burden of demonstrating beyond a reasonable doubt that the constitutional violation did not contribute to the jury's verdict, in cases of unobjected-to fundamental error, the *defendant* bears the burden of proving that there is a reasonable possibility that the error affected the outcome of the trial. As we indicated above, however, the record is somewhat muddled as to whether Digiallonardo preserved this issue for appeal. Regardless, we need not decide the issue because under either alternative we conclude the error was not harmless.

Digiallonardo argues that the use of his silence could have been viewed by the jury as evidence of his "guilty conscience [that] provided a critical link in a case where the evidence allegedly connecting [him] to the incident at Domino's was entirely circumstantial." He characterizes the statements as highly incriminating as they "implied guilt by informing the jury that he wished to remain silent because he knew he was being investigated in connection with the incident at Domino's." On this basis, he contends the error was not harmless.

The Domino's incident took place at 10:30 p.m. While it was very dark outside, lighting from surrounding buildings enabled the witnesses to make out some characteristics of the perpetrators and their vehicle. Neither witness saw the faces of the two perpetrators because the men were wearing masks, but both testified that one of the men was wearing a dark gray hooded sweatshirt and carrying a weapon and Jones testified that the other man was wearing dark

4

clothing. Immediately after the incident, the women reported that both of the perpetrators were Hispanic.

When the women were taken to the scene where officers had stopped Digiallonardo and his co-defendant and were shown the men at the same time, they were unable to identify them as the perpetrators, but agreed that the men were of the same "size and build" as the men they had seen at Domino's. Jones testified, however, that Digiallonardo's skin tone appeared lighter than that of the perpetrators and that she recognized immediately when he was taken out of the police vehicle that he was not Hispanic. Jones also testified that unlike the dark clothing that one perpetrator had been wearing and the gray hooded sweatshirt the other perpetrator was wearing, Digiallonardo was wearing a black sweatshirt and khaki pants and Ramirez was wearing a tank top.

Officers found several .22 and .410 shotgun shells in the vehicle; however, no shotgun or any weapons, bandanas, or masks were discovered. Nor were any of these items found in the area surrounding the route the vehicle likely would have traveled from Domino's.

In regard to identification of the car the women had seen during the incident, Ceja testified that the two-door silver Honda Civic in which Digiallonardo and his co-defendant were stopped appeared lighter than the vehicle that she saw at Domino's and did not have the windows tinted as she believed the perpetrators' car had. Jones indicated the vehicle was similar to the one she observed at Domino's. One officer testified that the description of the vehicle which came from dispatch before Digiallonardo and Ramirez were stopped was that of a "silver Honda," but he could not recall whether it had been specifically described as a Civic or whether it was a two or four door.

The state presented evidence that in the dirt area near Domino's officers found shoe prints made by a pair of Vans tennis shoes and another tennis shoe print with a circular pattern. Testimony established that when they were stopped by police, Digiallonardo was wearing Nike tennis shoes with soles similar to the prints found at Domino's and his co-defendant was wearing Vans, with soles similar to those also found at the scene. Testimony at trial established, however, that Vans is a popular brand of shoe worn by many people, and that although there was a Nike logo on the sole of Digiallonardo's shoe, no Nike logo was visible in the footprints found at the scene. There was also testimony from the officers that the tire tread found at the scene was a common tread.

5

Notably, the women never identified Digiallonardo as one of the perpetrators. This is especially apparent given the discrepancies between the women's descriptions of the perpetrators and their vehicle and the characteristics of Digiallonardo and Ramirez--specifically, that both of the perpetrators were initially identified as Hispanic, that clothes worn by the perpetrators were different from those worn by Digiallonardo and Ramirez when they were stopped, and that there were various descriptions of the type of car driven by the perpetrators compared to the Honda that Digiallonardo was stopped in. In addition, the weapon and masks or bandanas allegedly used in the incident were never found--either in Digiallonardo's vehicle or along the route that the men would have taken from Domino's to the location where they were stopped by police.

We also note that the nature of the erroneously admitted evidence was especially damaging in that unlike most erroneous admissions of evidence of a defendant's silence, it allowed the jury to make *two* potentially harmful inferences of guilt--based both on Digiallonardo's refusal to talk to the officer and also his indication as to *why* he was refusing to talk. This fact, combined with the relatively inconclusive nature of the evidence linking Digiallonardo to the crime, leaves a reasonable possibility that the erroneously admitted evidence contributed to the verdict--and thus we conclude it was not harmless error. Accordingly, we vacate Digiallonardo's judgment of conviction for burglary and remand for further proceedings.

Chief Judge LANSING and Judge GRATTON, CONCUR.