**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 40223/40224**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2014 Opinion No. 18** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: February 28, 2014** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **RAFAEL GALVAN,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Gregory S. Anderson, District Judge.

Judgment of conviction and concurrent unified sentences of ten years, with a minimum period of confinement of one and one-half years, for assault with a deadly weapon; unified four years with one and one-half years determinate for stalking in the first degree, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Rafael Galvan appeals from his judgment of conviction and sentence for stalking in the first degree, Idaho Code § 18-7905, and aggravated assault with a deadly weapon, I.C. §§ 18-905(a), 19-2520.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Galvan and the victim were married for twenty-three years but they separated due to marital problems. As a result of Galvan's escalating behavior of anger and aggressiveness, the victim sought and received a protection order. Despite the protection order, on multiple occasions Galvan waited for the victim to get off work and would then follow her in his car. The victim reported one incident to law enforcement. On another occasion, the police responded

while Galvan continued to follow her. This led to Galvan's arrest for violating the protection order. The final incident occurred when Galvan confronted the victim in the parking lot where she worked. Galvan brandished a handgun and threatened to kill the victim and himself. The victim talked Galvan out of his plan, and she was able to safely make it to the office building. A coworker witnessed the encounter and reported it to a supervisor who called the police. Galvan was later arrested and after he was given *Miranda*[1] warnings, he admitted that he contacted the victim at her work. When asked about the handgun, Galvan did not respond.

The State presented testimony at trial that Galvan fell silent when the officer questioned him about the handgun. The State referenced this silence in closing argument, explaining that a reasonable person would have adamantly denied an accusation of using a gun to threaten someone. Galvan did not object. Galvan claimed he did not remain silent, but instead denied having a gun. Galvan was found guilty of first degree stalking and aggravated assault with a deadly weapon. The district court sentenced Galvan to ten years with one and one-half years determinate on the assault charge, and a concurrent sentence of four years with one and one-half years determinate on the stalking in the first degree charge.

## II.

## ANALYSIS

### A. Fundamental Error

Galvan argues that the State committed fundamental error when the prosecutor commented on his post-*Miranda* silence during closing argument. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights;

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

(2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978. We address each prong in turn.

### 1. Constitutional rights

Galvan argues the prosecutor's comment during closing argument violated his right to remain silent under the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment.[2] The Fifth Amendment of the United States Constitution guarantees that "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The Idaho Supreme Court has held that the Fifth Amendment prohibits the State from inferring guilt from a defendant's post-custody silence during its case-in-chief. *State v. Ellington*, 151 Idaho 53, 60, 253 P.3d 727, 734 (2011) (citing *State v. Moore*, 131 Idaho 814, 820-21, 965 P.2d 174, 180-81 (1998)). The State may use pre-*Miranda* silence for impeachment purposes, pre-arrest or post-arrest. *Ellington*, 151 Idaho at 60, 253 P.3d at 734. In order to obtain the Fifth Amendment's protection, a defendant must claim it.

In *Salinas v. Texas*, __ U.S. __, 133 S. Ct. 2174 (2013), the United States Supreme Court examined the prosecutor's use of a defendant's silence at trial. Before receiving *Miranda* warnings, the defendant voluntarily answered the officer's questions during a non-custodial interrogation regarding a murder investigation. When the officer asked if a ballistics test would establish that the shell casings from the crime scene would match the defendant's shotgun, the defendant fell silent. The prosecuting attorney argued at trial that the defendant's reaction to the question showed that he was guilty. The defendant alleged this violated his Fifth Amendment right to remain silent. The plurality opinion held that the defendant's "Fifth Amendment claim fail[ed] because he did not expressly invoke the privilege against self-incrimination in response

---

[2] Although Galvan contends that both constitutions were violated, he provides no cogent reason why Article I, Section 13 of the Idaho Constitution should be applied differently than the Fifth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fifth Amendment in its analysis of Galvan's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

to the officer's question."[3]  *Id.* at __, 133 S. Ct. at 2178.  A defendant does not invoke this right "by simply standing mute."  *Id.*

Here, the State elicited the following testimony regarding Galvan's post-*Miranda* silence in its case-in-chief:

[Prosecutor:]  Did Mr. Galvan make any admissions to you with regard to the event on January 2nd?
[Officer:]     Some, yes.
[Prosecutor:]  What did he say?
[Officer:]     He said that he had went [to the victim's work to see the victim].
[Prosecutor:]  Okay.  And did he deny having a firearm?
[Officer]:     He never--when I'd ask him about a firearm, he wouldn't respond.

Galvan did not object and does not challenge this examination on appeal.  The prosecutor again inquired into the silence during the cross-examination of Galvan:

[Prosecutor:]  Okay.  And did that person ask you whether you had a gun at [the victim's work]?
[Galvan:]      Yes.
[Prosecutor:]  And did you deny it or admit it?
[Galvan:]      I denied it.
[Prosecutor:]  Okay.  And so [the officer] says that you didn't deny it. Are you saying he's not telling the truth?

Galvan again did not object and does not challenge this examination on appeal.  Finally, the prosecutor began the closing argument by recounting the testimony offered regarding Galvan pulling out the handgun.  The prosecutor then explained the following to the jury:

There are just so many factors that you use in your daily lives to determine whether someone is being truthful or not.

In this particular case, again, you have [the coworker] that is a completely independent witness, only works with [the victim].  Basically was not friends with her, necessarily, just coworkers.  And they didn't even discuss the event after it happened.

You look at [the supervisor].  She didn't see the gun.  But [the supervisor] heard the arguing and walked away and then later determined there was a problem.

Mr. Galvan, on the other hand, has a great interest in the outcome of this case.  Mr. Galvan, although given the opportunity when confronted by [the police officer] to deny that he pulled the gun on [the victim], failed to do so.

---

[3]     The plurality declined to address "whether the prosecution may use a defendant's assertion of the privilege against self-incrimination during a noncustodial police interview as part of its case in chief."  *Salinas v. Texas*, __ U.S. __, __, 133 S. Ct. 2174, 2179, (2013).

4

It would appear that a reasonable person being accused of something like that would, in fact, adamantly state that it never happened if, in fact, it did not happen.

Galvan did not object, but argues on appeal that the prosecutor's comment improperly inferred guilt from his silence. However, because Galvan did not affirmatively assert his right to remain silent when asked about the handgun, the Fifth Amendment is not implicated.[4] The officer testified that Galvan would not respond when asked about the handgun. Galvan's silence in response to the officer's question did not invoke his right to remain silent and Galvan's Fifth Amendment right was therefore, not violated by the prosecutor's statement in closing argument.[5]

On the other hand, Galvan also argues that his due process rights were violated when the prosecutor made reference to his post-*Miranda* silence during closing argument. In reaching its decision in *Salinas*, the plurality noted that a defendant's silence may be implicated under the due process protection that stems from *Miranda* warnings:

> Petitioner is correct that *due process* prohibits prosecutors from pointing to the fact that a defendant was silent after he heard *Miranda* warnings, *Doyle v. Ohio*, 426 U.S. 610, 617-618, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), but that rule does not apply where a suspect has not received the warnings' implicit promise that any silence will not be used against him, *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980).

---

[4] Galvan does not argue that the circumstances of his custody fall under the exceptions that will forgive the failure to affirmatively assert the right to remain silent. *See Salinas v. Texas*, __ U.S. __, __, 133 S. Ct. 2174, 2179-80 (2013) (noting the two exceptions for the failure to invoke the Fifth Amendment are: (1) a criminal defendant's decision not to testify at trial, and (2) "where governmental coercion makes his forfeiture of the privilege involuntary"). For example, "[d]ue to the uniquely coercive nature of custodial interrogation, a suspect in custody cannot be said to have voluntarily forgone the privilege 'unless [he] fails to claim [it] after being suitably warned.'" *Id.* at __, 133 S. Ct. at 2180 (quoting *Minnesota v. Murphy*, 465 U.S. 420, 429-30 (1984)). It is undisputed Galvan was informed of his *Miranda* rights and failed to affirmatively invoke the right to remain silent when questioned.

[5] The requirement in *Salinas* that a defendant must affirmatively invoke the Fifth Amendment protection abrogates conflicting Idaho precedent dealing with the Fifth Amendment, including: *State v. Stefani*, 142 Idaho 698, 700-03, 132 P.3d 455, 457-60 (Ct. App. 2005) (considering a defendant's pre-arrest, pre-*Miranda*, silence where defendant did not respond to officer inquiry as potential violation); *State v. Kerchusky*, 138 Idaho 671, 677-78, 67 P.3d 1283, 1289-90 (Ct. App. 2003) (holding pre-arrest, pre-*Miranda*, use of silence to infer guilt improper despite defendant's failure to invoke).

*Salinas*, __ U.S. at __ n.___, 133 S. Ct. at 2182 n.3. Thus, Galvan may be able to show a constitutional violation under the Due Process Clause because he fell silent after the officer had informed him of his *Miranda* rights and the prosecution commented thereon.

In *Doyle*, the United States Supreme Court held that after a defendant has received *Miranda* warnings, the use of a defendant's silence for impeachment purposes violates the Due Process Clause of the Fourteenth Amendment. *Doyle*, 426 U.S. at 619. The Court explained:

> The warnings mandated by [*Miranda*], as a prophylactic means of safeguarding Fifth Amendment rights, require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Id.* at 617-18 (citations omitted). This protection also prohibits the State from using a defendant's post-*Miranda* silence in its case-in-chief to establish a defendant's guilt. *Ellington*, 151 Idaho at 60, 253 P.3d at 734 (citing *Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986)). An exception exists where a defendant testifies at trial and claims to have told officers an exculpatory story after being *Mirandized*. Within this exception, the State may then use the defendant's silence not merely to impeach the defendant's credibility, but to rebut the testimony that the defendant offered the story. *Doyle*, 426 U.S. at 619 n.11; *State v. Dougherty*, 142 Idaho 1, 4-5, 121 P.3d 416, 419-420 (Ct. App. 2005). Yet, even where this exception is implicated, the State is prohibited from using the silence to imply the defendant's guilt. *State v. Strouse*, 133 Idaho 709, 714, 992 P.2d 158, 163 (1999).

### 2.      Clear error

In order to establish the State's use of his post-*Miranda* silence was a constitutional violation amounting to fundamental error, Galvan must show that the error is clear. The circumstances surrounding the reference to Galvan's silence present an unusual procedural posture. Though the exception to *Doyle* allows a prosecutor to rebut a defendant's testimony, the testimony on Galvan's silence was not admitted in the course of rebuttal. Before Galvan testified

6

to denying being silent, the officer testified during the State's case-in-chief that Galvan did not respond to the question about the handgun. Then without any testimony during direct examination regarding the conversation with the officer, the prosecutor asked Galvan about the conversation during cross-examination and Galvan testified he told the officer he did not have a gun. Galvan failed to object below and on appeal he has not challenged the officer's initial testimony or the questioning during cross-examination. Thus, the prosecutor in closing commented on conflicting testimonial evidence that was admitted and before the jury for consideration.[6] The circumstances of Galvan's asserted silence are also unclear. The officer's testimony does not reveal whether Galvan fell completely silent after the question or whether he failed to answer one question among a series of questions relating to the incident. It is with this murky backdrop that we proceed.

> In reviewing the second prong under the *Perry* analysis, this Court has stated:

> According to the United States Supreme Court's decision in *United States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993), "plain" is synonymous with "'clear' or, equivalently, 'obvious.'" *Id.* at 734, 113 S. Ct. at 1777, 123 L. Ed. 2d at 519. Thus, the inquiry is whether "the error is clear under current law," *id.*, or, as articulated by the Ninth Circuit Court of Appeals, whether the "available authorities provide a clear answer to the question." *United States v. Thompson*, 82 F.3d 849, 855 (9th Cir. 1996). In *Thompson*, the court held that an issue raised for the first time on appeal was not "plain error" because there was at least some room for doubt about the outcome of this issue since there was no controlling United States Supreme Court precedent and the other circuits were split. *Id.* at 855-56. *Accord United States v. Salinas*, 480 F.3d 750, 759 (5th Cir. 2007) (holding there was not plain error where the circuit's law was unsettled on the issue and other circuits had reached divergent conclusions); *United States v. Humphrey*, 164 F.3d 585, 588 (11th Cir.1999) (holding where no precedent clearly resolved the defendant's claim of error, the error was not "obvious" and thus could not be reviewed under the plain error doctrine); *United States v. Alli-Balogun*, 72 F.3d 9, 12 (2d Cir. 1995) (holding that a claimed error could not be plain error when the Supreme Court and the Second Circuit had not spoken on the subject and the authority in the other circuits was split).

*State v. Corbus*, 151 Idaho 368, 372, 256 P.3d 776, 780 (Ct. App. 2011).

---

[6] Galvan argues, "Not only did [the] use of Mr. Galvan's silence undermine Mr. Galvan's credibility, but it also undermined his credibility as to the key question before the jury, i.e. whether or not Mr. Galvan was being honest when he testified that he did not threaten [the victim] with a gun." This shows the State attempted to discredit Galvan based on his silence.

The State does not claim the prosecutor's statement was rebutting Galvan's denial of the silence. Instead, the State argues that Galvan waived his *Miranda* rights by talking and therefore *Doyle* does not apply to this case.[7] Galvan responds that *Doyle* and its progeny do not require a defendant who has waived *Miranda* to affirmatively reassert it in order to rely on *Doyle*. However, Galvan admits he is unaware of any Idaho case law addressing this issue. Two Idaho cases that are somewhat similar to Galvan's situation are *State v. White*, 97 Idaho 708, 551 P.2d 1344 (1976) and *State v. Cobell*, 148 Idaho 349, 223 P.3d 291 (Ct. App. 2009). In *White*, the defendant testified at trial to statements he made after receiving *Miranda* warnings. The prosecutor then asked about the defendant's refusal to answer some of the questions during the interrogation. The Idaho Supreme Court held that the prosecutor's questions regarding the defendant's refusal to answer some of the officer's questions was improper. *White*, 97 Idaho at 715, 551 P.2d at 1351. The Court explained, "[i]f a prosecutor is allowed to introduce evidence of silence, for any purpose, then the right to remain silent guaranteed in [*Miranda*] becomes so diluted as to be rendered worthless." *Id.* at 714-15, 551 P.2d at 1350-51. However, the comment on silence in *White* dealt with a defendant that expressly asserted the right to remain silent during the interrogation. *Id.* at 713 n.7, 551 P.2d at 1349 n.7. In *Cobell*, this Court reviewed similar facts where a defendant signed a *Miranda* waiver form, answered some questions, told officers he no longer wanted to talk, and had his failure to provide an exculpatory story used against him at trial. We held that the district court erred in allowing the comment on post-*Miranda* silence. *Cobell*, 148 Idaho at 353, 223 P.3d at 295. However, the defendant told officers he did not want to speak with them. *Id.* at 351, 223 P.3d at 293.

Unlike *White* and *Cobell*, Galvan's silence was part of a conversation after *Miranda* had been waived. And unlike *White* and *Cobell*, Galvan did not affirmatively invoke the right to remain silent, so his silence could mean a number of things other than invocation of this right. *See Salinas*, __ U.S. at __, 133 S. Ct. at 2182 (noting a defendant might remain silent to come up

---

[7]    The State relies on *Berghuis v Thompkins*, 560 U.S. 370 (2010) (holding officers must stop an interrogation when a defendant affirmatively asserts the right to remain silent) and *Salinas*, to support its argument that a defendant must unambiguously invoke *Miranda* after waiver to stay within the protections of *Doyle*. However, *Berghuis* dealt with when officers must stop a custodial interrogation to avoid a *Miranda* violation, whereas, *Salinas* expressly noted that the Due Process Clause may still apply to preclude use of a defendant's silence even though there has been no *Miranda* violation. Neither case dealt with *Miranda's* inherent promise articulated in *Doyle*.

8

with a good lie, from embarrassment, or to protect someone else). To establish that the State's use of his silence violated due process despite his waiver of *Miranda*, Galvan offers *United States v. Canterbury*, 985 F.2d 483 (10th Cir. 1993). In *Canterbury*, after the defendant was arrested and given *Miranda* warnings, he made several incriminating statements. At trial, the defendant offered an entrapment defense. The State responded with a line of questions as to why the defendant had not offered this defense to officers when he was arrested. The Tenth Circuit held that because the questions were not designed to impeach the defendant, but were offered instead to infer guilt from the silence, the defendant's due process rights were violated. *Id.* at 486. In reaching its decision, the Court noted that "when a defendant answers some questions and refuses to answer others, or in other words is 'partially silent,' this partial silence does not preclude him from claiming a violation of his due process rights under *Doyle*." *Id.*

However, as to this "partial silence," there is a federal circuit split. *Compare Hurd v. Terhune*, 619 F.3d 1080, 1087 (9th Cir. 2010) ("A suspect may remain selectively silent by answering some questions and then refusing to answer others without taking the risk that his silence may be used against him at trial."), *United States v. Scott*, 47 F.3d 904, 907 (7th Cir. 1995) ("Thus a suspect may speak to the agents, reassert his right to remain silent or refuse to answer certain questions, and still be confident that *Doyle* will prevent the prosecution from using his silence against him."), and *Canterbury*, 985 F.2d at 486, *with United States v. Pando Franco*, 503 F.3d 389, 397 (5th Cir. 2007) ("In short, by knowingly, intelligently, and voluntarily waiving his *Miranda* rights and then answering questions about his silence, [the defendant] cannot be said to have been exercising his privilege against self-incrimination at that time.") and *United States v. Burns*, 276 F.3d 439, 442 (8th Cir. 2002) ("[The defendant's] silent response to one inquiry during the interrogation and eventual refusal to respond to further questioning were 'part of an otherwise admissible conversation' and . . . the admission of the conversation in its entirety did not violate his due process rights."); *see also United States v. Andujar-Basco*, 488 F.3d 549, 556-57 (1st Cir. 2007) ("At least with respect to clear affirmative assertions, we do not see how an initial *Miranda* waiver can operate to make a subsequent *Miranda* assertion admissible against the defendant, nor do we perceive a sound rationale for cutting back the scope of *Miranda's* protections.").

The Third Circuit reviewed a similar claim to Galvan's in *McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 104 (3d Cir. 2012). The defendant alleged his rights were violated

when the State's questions emphasized his post-*Miranda* silence. The defendant had answered some of the questions posed to him in the interrogation subsequent to receiving *Miranda* warnings, but selectively chose not to answer others. The Third Circuit reviewed the above-listed circuit split, and concluded: "it cannot be said that 'clearly established Federal law, as determined by the Supreme Court of the United States,' 28 U.S.C. § 2254(d)(1), prevents a defendant's selective silence from being used against that defendant at trial." *Id.* Thus, it is apparent from the above-cited split that Galvan has failed to show under the second *Perry* prong that the available authorities sufficiently establish a clear answer as to whether his constitutional rights were violated. Galvan waived *Miranda* by voluntarily speaking with the officer. Whether the State's later comment on Galvan's silence during this conversation violated his due process rights is not obvious, plain, or clear. *See Corbus*, 151 Idaho at 375, 256 P.3d at 783.

### 3. Harmless error

Although the violation is unclear, even if we assume error, the error is harmless. Galvan claims the error was not harmless because the State's case was weak. Under the third prong of *Perry*, Galvan must demonstrate that there is a reasonable possibility that the alleged impermissible comments affected the outcome of the trial. *State v. Betancourt*, 151 Idaho 635, 640-41, 262 P.3d 278, 283-84 (Ct. App. 2011) (citing *Perry*, 150 Idaho at 226, 245 P.3d at 978). Galvan argues the State's case was weak because it could not produce a gun at trial and Galvan's guilt turned on the credibility of the State's witnesses who offered conflicting testimony. The coworker testified that Galvan pointed the gun at the victim, whereas the victim testified that Galvan held the gun down and never raised it. The victim also testified that she did not know how the coworker saw the gun because Galvan kept it down in order to hide it from other people.

The State responds that there was overwhelming evidence of Galvan's guilt admitted at trial. The victim testified to multiple protection order violations, which involved Galvan waiting for the victim to get off work and following her in his car. This testimony was corroborated by an officer's testimony and a video that showed Galvan following the victim in his car and his eventual arrest. Both the victim and the coworker testified that Galvan had a handgun. The victim described, in detail, Galvan's use of the gun. Though each witness offered a slightly different perspective of how Galvan held the gun, the coworker testified that the angle from which she viewed the incident allowed her to clearly see Galvan. The differing accounts of how Galvan held the gun is consistent with their differing viewpoints. Further, the supervisor called

10

the police regarding the confrontation after the coworker notified her of the incident, testifying that she heard Galvan and the victim arguing. Though neither the coworker nor the supervisor heard what Galvan and the victim said, both testified that it was not an amicable exchange. The three witnesses offered complementary, not conflicting, testimony that established Galvan had again violated the protection order and brandished a handgun at the victim during a tense encounter.

On the other hand, Galvan testified the encounter was not argumentative. This conflicts with the supervisor's and coworker's account of the incident and belies the need for police to have been called. Galvan also testified that the victim kissed him before he left. Such testimony is remarkable considering the victim obtained a protection order against Galvan, that she called the police on multiple occasions, and that the other witnesses described the encounter as argumentative. Additionally, Galvan testified at trial that he did not have access to his guns because they were stored at his sister's house and she was out of town at the time of the incident. Assuming the jury assigned some credibility to this testimony, the State noted for the jury that a person may readily obtain a firearm in the state of Idaho. Considering Galvan's escalating history of anger and aggression, multiple violations of the protection order, and the three witnesses testifying in complete contradiction to Galvan's account, the prosecutor's reference to Galvan's silence was harmless. Further, as noted, the jury heard the officer state that Galvan fell silent and heard Galvan's denial of being silent, instead stating he told the officer he did not have a gun, all without objection or assignment of error on appeal.

## B.     Galvan's Sentence

Galvan also asserts that the district court imposed an excessively harsh sentence. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710

(Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Galvan points to various mitigating factors to explain why the district court abused its discretion. Galvan asserts that he has a minimal criminal history, he does not want continued contact with the victim, he was granted visitation with his children despite the incident, and he is a contributing member of society through his roofing business. Galvan explains this incident occurred during the breakdown of a twenty-three-year marriage, which helps put his actions in context. However, considering the nature of the offense and Galvan's failure to accept responsibility at sentencing, the sentence is reasonable. Galvan exhibited a continued pattern of ignoring a protection order that ended in him brandishing a gun at the victim and threatening to kill her. The presentence investigation report also indicated that Galvan presented a high risk to reoffend. Galvan has failed to show that the district court abused its discretion.

**III.**

**CONCLUSION**

Galvan is unable to establish that a clear constitutional violation occurred and even assuming the prosecutor improperly referenced Galvan's silence during closing argument, any error is harmless. Therefore, Galvan's judgment of conviction and sentence for stalking in the first degree and aggravated assault with a deadly weapon are affirmed.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**