**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41970**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Unpublished Opinion No. 517** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: June 11, 2015** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **CRYSTAL GABEL,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. George A. Southworth, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Chief Judge

Crystal Gabel appeals from her judgment of conviction for possession of a controlled substance. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

An officer stopped a vehicle and received consent from the driver to search the vehicle. After four passengers exited, the officer searched the vehicle and found a small plastic bag containing methamphetamine in the area of the vehicle where Gabel had been sitting. The officer informed Gabel that her boyfriend had told the officer that he had given the bag to Gabel, which she confirmed. However, when her boyfriend was handcuffed, Gabel recanted her story and said her boyfriend did not know about the bag. Gabel then explained that a woman handed

1

the bag to Gabel and that Gabel did not know what was in the bag. Gabel was charged with possession of a controlled substance. I.C. § 37-2732(c)(1). Gabel's case went to trial and ended in a hung jury. A second trial resulted in Gabel being found guilty of possession of methamphetamine. Gabel appeals.

## II.

## ANALYSIS

Gabel argues that the prosecutor committed two instances of misconduct during closing argument at trial. First, she argues that the prosecutor misstated the law when she told the jury that it must determine whether Gabel "knew or should have known" that the substance in the plastic bag was methamphetamine. Second, Gabel argues that the prosecutor improperly offered her opinions concerning Gabel's untruthfulness and of her guilt of the charged crime.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *Herring v. New York*, 422 U.S. 853, 862 (1975). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan,* 139 Idaho 267, 280, 77 P.3d 956, 969 (2003).

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

Gabel made no contemporaneous objection to the prosecutor's comments at trial. In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome

2

of the trial proceedings. *Id.* at 226, 245 P.3d at 978. The issue here is whether Gabel has met her burden of showing that the prosecutor's comments constitute fundamental error.

## A.     Misstatement of Law

Gabel argues that the prosecutor misinformed the jury when the prosecutor told the jury it could find Gabel guilty if it believed that she "should have known" that the substance she possessed was methamphetamine. Possession of a controlled substance is a general intent crime requiring that the defendant knowingly possess the substance. *State v. Blake*, 133 Idaho 237, 240, 985 P.2d 117, 120 (1999). The purpose of the intent element in the definition of a possession offense is to separate innocent, accidental, or inadvertent conduct from criminal behavior. *State v. Stefani*, 142 Idaho 698, 704, 132 P.3d 455, 461 (Ct. App. 2005), *abrogated on other grounds by State v. Galvan*, 156 Idaho 379, 326 P.3d 1029 (Ct. App. 2014). In order to secure a conviction for possession of methamphetamine in violation of I.C. § 37-2732(c), the state must prove that the defendant *knowingly* possessed the controlled substance. *State v. Armstrong*, 142 Idaho 62, 64, 122 P.3d 321, 323 (Ct. App. 2005). Thus, the defendant's ignorance of the presence of the substance, or mistaken belief that it was an innocuous material, if believed by the jury, would be exculpatory. *Id.* Accordingly, the prosecutor misinformed the jury that it must determine whether Gabel "knew or should have known" that the substance in the small plastic bag was methamphetamine. A jury finding that Gabel "should have known" that the substance she possessed was methamphetamine would not have been sufficient to find her guilty of possession of a controlled substance. The considerable latitude afforded both sides during closing arguments has limits. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). The considerable latitude afforded the parties does not allow a party to misrepresent the law. *See Phillips*, 144 Idaho at 587, 156 P.3d at 587. Accordingly, Gabel has shown a clear and obvious error by the prosecution.

However, Gabel has not shown that the prosecutor's error affected the outcome of the trial. Other than the one misstatement, the prosecutor did not attempt to prove or argue that Gabel should have known the substance she possessed was methamphetamine. Rather, the prosecutor argued that Gabel knew it was methamphetamine and provided circumstantial evidence to prove that Gabel had actual knowledge that the substance she possessed was methamphetamine. For example, there was evidence produced at trial that Gabel admitted to

3

experimenting with methamphetamine and that she had admitted to smoking methamphetamine four hours prior to the vehicle being stopped and a week prior to that.

Finally, we note that the district court instructed the jury that, "if anyone states a rule of law different from any I tell you, it is my instruction that you must follow." The district court properly instructed the jury that the state must prove that Gabel, "either knew [the substance she possessed] was methamphetamine or believed it was a controlled substance." The district court instructed the jury that, if there was a conflict with what another person had said, the jury was to follow the district court's instruction. We presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). Gabel has not rebutted the presumption that the jury heeded the district court's instruction that it must find that Gabel knew she possessed methamphetamine or believed it was a controlled substance, rather than the prosecutor's misstatement.

## B.     Opinion Statements

Gabel alleges that the prosecutor committed misconduct when she offered her opinions concerning Gabel's untruthfulness and of her guilt of the charged crime. During her closing argument, the prosecutor stated:

> So that leads to the question did she know it was meth. Did she know what was in that baggie? Well, again, just look at the facts. Based on her boyfriend's testimony, they were in that car with a known drug dealer. They knew he dealt drugs. Based on her statements to the officer, we know that she has experimented with them. Those are her words on the audio: I've experimented with it. And then later: I used it about four hours ago. This is a Defendant who has used meth before. Did she know what was in the baggie? Yeah, she knew what was in that baggie.
>
> She tells the officer that she doesn't. She says oh, what's that, what's that? So then we have to ask, was she being truthful when she said oh, what's that? I don't know what it is. Would she have a motive to not be truthful at that point? *I think so*. Would she be trying not to get in trouble by pretending she didn't know what was in the bag? Maybe. She's used meth before. She knew what was in that bag.
>
> I want to talk about credibility just a little bit. During jury selection, we talked about how you decide who's being truthful when you have two different version of events. . . .
>
> . . . You get to look at the credibility of the people involved and all the facts and decide who's telling the truth.

Now, there's been a lot of information about the officer in this case being untruthful with [Gabel]. He was. He used a strategic untruth that he had been taught to do in his training to elicit information from someone on scene. Why do we do that? Why would he do that? Well, you find something in the car, you have four people in it, and they all say, oh, not mine. Not my meth.

You got to find some way for one of them to pony up and be truthful. It's called strategic untruth, and it's what we teach our officers to do, so he did it. He said to [Gabel], your boyfriend said he handed it to you.

Now, the defense is going to tell you that everything that she said after that was a product of that untruth, that she was just mimicking the officer. She was just saying what he said. And if she said, yeah, you're right and left it at that, *I could maybe buy that*. But she didn't. She went on and on to explain how it was handed to her, what she did with it, where she put it. And then in the second version she goes on and on about the friend and the party, and again it's handed to her and what she does with it. She doesn't just mimic him. She gives him a whole version of events.

And today we're being asked to say that wasn't the truth. But she said it. She told us that. Did she possess methamphetamine? Did she know it was methamphetamine? One vehicle in this case. One bag of meth on one seat. And one Defendant who has told us twice that it was her methamphetamine that she held in her hand, that she possessed.

(Emphasis added.)

Gabel alleges that the prosecutor committed misconduct when she told the jury that, in her opinion, Gabel had a motive to be untruthful and in stating that the prosecutor did not believe Gabel's version of the events. Gabel asserts that the "I think so" and "I could maybe buy that" language from the prosecutor's closing statement, emphasized above, support her allegation. Closing argument should not include counsel's personal opinions and beliefs about the credibility of a witness or the guilt or innocence of the accused. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. *See also State v. Garcia*, 100 Idaho 108, 110-11, 594 P.2d 146, 148-49 (1979); *State v. Priest*, 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct. App. 1995); *State v. Ames*, 109 Idaho 373, 376, 707 P.2d 484, 487 (Ct. App. 1985). A prosecuting attorney may express an opinion in argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence, but the prosecutor should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial. *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1. The safer course

5

is for a prosecutor to avoid the statement of opinion, as well as the disfavored phrases "I think" and "I believe" altogether. *Id.*

The prosecutor used the disfavored "I" language that this Court warned against. The use of the "I think" and "I could maybe buy that" language sounds as if the prosecutor was expressing her personal opinion regarding the facts of the case. However, read in context it is apparent that the prosecutor was permissibly expressing opinions based upon the evidence. She explicitly stated that the opinions she expressed were based on inferences from the evidence presented at trial. The prosecutor prefaced her comments by stating, "Did she know what was in that baggie? Well, again, just look at the facts." The prosecutor then explained how the facts led to the inferences that Gabel had a motive to be untruthful and that her confession was not the result of mimicking the officer's comments. While it would have been prudent (and easily accomplished) for the prosecutor to avoid the appearance of expressing her personal opinion, Gabel has not shown a clear and obvious error in the comments made by the prosecutor.

## III.

## CONCLUSION

Gabel has failed to show that comments made by the prosecutor during closing argument constituted fundamental error. Therefore, her judgment of conviction for possession of a controlled substance is affirmed.

Judge LANSING and Judge GUTIERREZ, **CONCUR**.