**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46318**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: February 4, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| JANELL OZUNA, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Bradly S. Ford, District Judge.

Judgment of conviction for felony possession of methamphetamine and misdemeanor possession of drug paraphernalia, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant. Jenny C. Swinford argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.
_____

HUSKEY, Chief Judge

Janell Ozuna appeals from her judgment of conviction entered upon the jury verdict finding her guilty of possession of methamphetamine and possession of drug paraphernalia. Ozuna argues that it was misconduct for the State to comment on her silence and to elicit inadmissible testimony during trial and that the prosecutorial misconduct rose to the level of fundamental error. Because fundamental error did not occur, we affirm the district court's judgment of conviction.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

An officer responded to a disturbance and contacted Ozuna, who was standing on the sidewalk in front of her residence. As the officer spoke with Ozuna, the officer noticed Ozuna

1

was holding a pair of gloves and a glass methamphetamine pipe with burn marks. During the conversation, the glass pipe fell out of Ozuna's hand and broke on the ground. Ozuna said "Oh," looked at the pipe, looked back at the officer, and then continued the conversation. The officer explained to Ozuna that the officer saw the pipe fall and hit the ground, and he arrested Ozuna. The State charged Ozuna with felony possession of a controlled substance, methamphetamine, Idaho Code § 37-2732(c)(1), and misdemeanor possession of drug paraphernalia, I.C. § 37-2734A.

Prior to trial, the district court instructed the State that two of the officer's statements in the probable cause affidavit were inadmissible and the officer was not to testify to those statements. The statements from the probable cause affidavit were: (1) the officer said he identified Ozuna due to previous contacts with her; and (2) the officer said he transported Ozuna to the police station so detectives could speak with her about an ongoing investigation. The State confirmed it discussed those areas of testimony with the officer, and the officer was aware those two subjects were not to be mentioned during trial.

Nonetheless, when the officer testified at trial about the identification of Ozuna, the officer stated: "I was able to identify her from a previous contact. So as soon as I saw her, I recognized her." Ozuna's counsel did not object to this testimony.

Ozuna also testified at trial. She explained she was outside her house picking up garbage when she picked up a pair of gloves. Ozuna testified the gloves did not belong to her and were not in her yard. She also testified she never looked inside the gloves, had never seen the gloves before, and had no knowledge of the pipe within the gloves until the pipe dropped onto the ground. During cross-examination, Ozuna was asked if she said anything to the officer such as, "That's not mine," and Ozuna responded, "Later sometime." Aside from telling the officer the pipe was not hers, Ozuna did not offer any additional explanation about how she came to possess the gloves and the methamphetamine pipe.

The jury found Ozuna guilty of felony possession of methamphetamine and misdemeanor possession of drug paraphernalia. The district court sentenced Ozuna to five years, with one year determinate, and retained jurisdiction. Ozuna timely appeals.

## II.

## STANDARD OF REVIEW

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). However, when a defendant alleges that a constitutional error occurred at trial and the alleged error was not followed by a contemporaneous objection, the claim of error must be reviewed under the fundamental error doctrine. *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate three things. First, the defendant must show that one or more of the defendant's unwaived constitutional rights were violated. *Id.* Second, the error must be clear and obvious, meaning the record must demonstrate evidence of the error and evidence as to whether or not trial counsel made a tactical decision to not object. *Id.* Third, the defendant must demonstrate that the error affected the defendant's substantial rights, which means the error identified in the first and second prongs of the test actually affected the outcome of the trial. *Id.* at 119-20, 443 P.3d at 133-34.

## III.

## ANALYSIS

Ozuna claims fundamental error occurred and argues the State committed misconduct in two ways: first, by eliciting testimony and commenting on Ozuna's silence to prove her guilt and second, by eliciting testimony from the officer in contravention of the district court's order.

### A.     Evidence of Ozuna's Silence

Ozuna argues it was misconduct for the State to use her silence in order to prove guilt because it violated her unwaived constitutional right to remain silent and right to a fair trial. In response, the State claims Ozuna cannot show fundamental error. The State asserts Ozuna's argument is fundamentally flawed because in order to assert a claim that her Fifth Amendment rights were violated, Ozuna had to invoke her Fifth Amendment rights during questioning, which she did not do.

The Fifth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 13 of the Idaho Constitution, guarantee a criminal defendant the right not to be compelled to testify against himself. This guarantee also bars prosecutors from commenting on a defendant's invocation of his or her right to silence. *Griffin v. California*, 380 U.S. 609, 613-14 (1965). Commenting on a defendant's refusal to answer questions or provide information can

3

constitute an impermissible comment on a defendant's silence. *See State v. Galvan*, 156 Idaho 379, 385, 326 P.3d 1029, 1035 (Ct. App. 2014).

Under the Fifth Amendment, whether and to what extent the State can comment on the defendant's silence depends on whether the defendant was in custody and whether *Miranda*[1] warnings were given. For example, where the defendant's silence occurs in a pre-custody, pre-*Miranda* circumstance, a witness who desires the protection of the privilege against self-incrimination must claim it at the time he relies on it. *Salinas v. Texas*, 570 U.S. 178, 182-83 (2013). In *Salinas*, the Supreme Court held that the prosecutor's use of Salinas' noncustodial, pre-*Miranda* silence did not violate the defendant's Fifth Amendment rights. *Salinas*, 570 U.S. at 191.

However, a different outcome may result where the defendant's silence occurs during either a post-custody, pre-*Miranda* interrogation or during a post-custody, post-*Miranda* interrogation. Silence that occurs during a post-custody, pre-*Miranda* setting may be used by the State for impeachment, but not solely as evidence of guilt. *State v. Parker*, 157 Idaho 132, 147, 334 P.3d 806, 821 (2014). Silence that occurs post-custody and post-*Miranda* cannot be used by the State for any purpose. *Parker*, 157 Idaho at 147, 334 P.3d at 821.

Here, Ozuna directs this Court to four instances of alleged misconduct: one in opening statement, one in direct examination, one in cross-examination, and one in closing argument. In its opening statement, the State explained that Ozuna was placed under arrest by the officer. The State provided the following explanation regarding Ozuna's arrest: "At this point the defendant didn't start to adamantly deny that it was hers. Instead, she turns around, puts her hands behind her back, and is placed under arrest, only once telling Officer Parsons, 'That pipe wasn't mine.'"

During direct examination, the State asked the officer about the events and Ozuna's reaction. Ozuna argues "the prosecutor committed misconduct by implying guilt from silence" during the following exchange:

> Q: Okay. Did the defendant react at all when the pipe broke on the ground?
> A: Yes. She made the comment verbally, said, "Oh." She looked at the pipe and then looked up at me and then continued to talk about who was living on the property.
> Q: So she just continued in the conversation?
> A: Yes.
> Q: Okay. From before the pipe broke?

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

A:   Yes.
Q:   Where she was at in the conversation before the pipe broke?
     Sorry.
A:   Correct.  Yes.
Q:   Okay.  What did you do?
A:   At that time I told [Ozuna] that I had seen the pipe fall out, hit the ground, and to turn around and place her hands behind her back.  And then I put her into custody.
Q:   Did she say anything to you?
A:   No.
     Let me rephrase that.
     She did state at some point during our contact that it wasn't hers.
Q:   Okay.  Do you remember if it was right when you were placing her under arrest, or later?
A:   I don't recall.
Q:   Do you remember I guess maybe adamantly denying, like repeatedly saying "That's not mine"?
A:   No.  Not adamantly; no.

Ozuna argues the State was also improper to use silence to imply guilt during the cross-examination of Ozuna.  Ozuna cites to the following exchange:

Q:   So when he did tell you that he was going to be placing you under arrest, did you tell him that you had just been picking up trash then?
A:   No.
     . . . .
A:   There was no questions asked of where the pipe came from or what.
Q:   Okay.
A:   Anything.
Q:   But you didn't say that you had just been picking up trash?
A:   No.
Q:   You didn't say that you had just picked up the gloves?
A:   No.
Q:   Okay.  Now, I think there is, Officer Parsons did say at least at one point you did say the pipe wasn't yours?
A:   Yes.
Q:   Okay.  But you didn't offer any other explanation?
A:   No.
Q:   Just, "The pipe is not mine"?
A:   No.  I don't think I have to offer explanation, because I'm not guilty for it as what I think, so.
Q:   Okay.  But I'm just asking.  You didn't tell--
A:   And for questions not being asked.  I'm not going to respond to something that can be used against me.
Q:   And that's your opinion.  That's absolutely fine.
     But I'm just asking you, you didn't tell Officer Parsons other than that one time, "That's not my pipe"?  You didn't say anything else?

A:    No.

      . . . .

Q:    But at the time you were being placed under arrest, you were calm and not
      adamantly denying that what you were being placed under arrest for, you
      weren't guilty of; is that correct?

A:    Was I calm about it?

Q:    Uh-huh.

A:    Yes.

Q:    Okay. And you weren't telling the officer at that point that the gloves
      weren't yours, the pipe wasn't yours?

A:    No.

Finally, Ozuna claims that in the State's closing argument, the State explicitly relied on evidence of Ozuna's silence to argue her guilt. Ozuna directs this Court to the following statements:

> But what else can you look at? We can look at her reactions. Officer Parsons described them. She even described them on the stand. When the pipe fell out of her hand and broke onto the ground, she didn't start saying, "That's not mine." I didn't even know that was in there. I was just picking up trash.[2] Instead, she tries to keep talking, trying to divert Officer Parsons' attention elsewhere. Why did she do this? Because, she knew that that pipe was in her hand. She knew she could get in trouble. So she was hoping to distract Officer Parsons, hoping that Officer Parsons wouldn't notice.
> What else can you look at? When Officer Parsons told her that she was under arrest, she even told you she had a calm demeanor. She turned around, put her hands behind her back and was led off.

Additionally, Ozuna challenges the following portion of the State's rebuttal argument in its closing argument:

> What else is reasonable? What else would your common sense tell you? Does your common sense tell you that when you're placed under arrest for an item you've just picked up from trash that you didn't even know was in your hand and you're being placed under arrest--what does your common sense tell you that you would do, or that a reasonable person would do? I propose to you that a reasonable person would say, "That's not mine. I just picked that up. It was in the gloves. I didn't even know it was there." A reasonable person would tell that story. If it was the truth, you would tell the story. When it's a story that you're making up to get out trouble, you tell it six months later. You tell it for the first time in a courtroom to try and avoid getting in trouble. So what's reasonable? What makes sense?

---

[2]     From context, it would be more accurate to add two sets of quotation marks to the quoted material, such that the State's closing argument reads:  "When the pipe fell out of her hand and broke onto the ground, [Ozuna] didn't start saying, 'That's not mine.'  'I didn't even know that was in there.'  'I was just picking up trash.'"

Whether Ozuna's silence can be used, and for what purpose, depends on when an arrest occurred and when *Miranda* warnings were given. For instance, our analysis changes depending on whether the State used the defendant's silence prior to an arrest and prior to *Miranda* warnings, as compared to after an arrest and after *Miranda* warnings. Similarly, it matters whether the State is offering the evidence of a defendant's silence to infer guilt or rather, to impeach the defendant.

Here, the alleged error was not followed by a contemporaneous objection, and thus, this Court reviews the case under the fundamental error doctrine. Under the first two prongs of the fundamental error doctrine, Ozuna must establish that her Fifth Amendment right to silence was violated and that the error is clear and obvious. *Miller*, 165 Idaho at 119, 443 P.3d at 133. For the error to be clear and obvious, the record must demonstrate evidence of the error as well as evidence as to whether or not trial counsel made a tactical decision to not object. *Id.*

In this case, the nature of the alleged constitutional violation is not clear from the record. There was testimony that Ozuna was not silent throughout the exchange, but the timing of Ozuna's statements vis-a-vis her arrest cannot be determined from the record. The officer did not recall if Ozuna's denial occurred simultaneous to her arrest or at a later time. Ozuna testified the statement came after her arrest, but does not specify when. There is no evidence as to when, or if, *Miranda* warnings were given. There is no evidence about whether Ozuna made only one statement denying ownership of the pipe or if she continued the conversation with the officer, interspersed with periods of silence and occasions in which Ozuna denied ownership. Further, there is no evidence whether the State's question regarding "adamant denial of ownership" was meant to characterize Ozuna's statement denying ownership of the pipe or whether it was a comment on her silence. These facts are necessary for this Court to determine which analytical rubric to apply in evaluating a Fifth Amendment violation. This Court will not speculate as to the timing of the events, the extent to which Ozuna was silent, or whether the State's comment on an "adamant denial" relates to her statement or her silence. The record is unclear as to the nature and scope of the alleged Fifth Amendment violation, and thus, there was no clear violation of Ozuna's unwaived constitutional right in this case.

Additionally, there is no evidence as to whether or not trial counsel made a tactical decision to not object. Pursuant to *Miller*, to satisfy the second prong of the fundamental error analysis, the record must demonstrate evidence of the error and evidence as to whether or not

7

trial counsel made a tactical decision to not object. *Miller*, 165 Idaho at 119, 443 P.3d at 133. In other words, defendant must show the record itself, without additional information, demonstrates that the absence of an objection was not tactical.

Ozuna claims, first, there is no legitimate strategic or tactical reason for defense counsel to choose not to object to the evidence regarding Ozuna's silence. Pursuant to *Miller*, such a claim by itself is insufficient to establish clear error under the second prong of the analysis. *Miller*, 165 Idaho at 119, 443 P.3d at 133. Second, Ozuna argues the second prong of the analysis was satisfied because her counsel moved to dismiss the charges pursuant to Idaho Criminal Rule 29 after the State presented its case. According to Ozuna, the Rule 29 motion established that the lack of an objection was not tactical because the motion would have been more successful had her counsel objected to comments on Ozuna's silence. We disagree. First, Ozuna's motion did not move to dismiss based on constitutional violations or the State's use of her silence. Second, Ozuna filed the Rule 29 motion prior to the alleged misconduct in her cross-examination and closing argument; these statements would therefore have no impact on the success of the motion.

Ozuna also asserts that her closing argument is sufficient to satisfy the second prong of *Miller*. In her closing argument, Ozuna stated:

> And I should mention this. The prosecutor keeps alluding to the fact that my client didn't protest enough when she was arrested. But you know, this is still America, isn't it? Don't we have that right, when the officer says, "put your hands behind your back," to keep your mouth shut? Isn't that what my client did? Is the idea here that she should have put up a fight? She should have said other things? She knew she was under arrest at that point. What good does it do to speak up at that point? And she didn't. And the reason she didn't is she wanted you good people to hear her side of the story.

According to Ozuna, because her closing argument attempted to argue against the State's comments and because this argument would have been more successful had counsel objected throughout trial, the lack of an objection was not strategic or tactical. That counsel's strategy may have been more successful had counsel made additional objections rests on the underlying recognition that trial counsel made a strategic choice to address these issues in closing argument. Counsel's choice to address the issue in this manner, as opposed to a different manner, demonstrates that trial counsel recognized the issue and made a strategic or tactical choice about how and when to address it. Clear error is not established simply because a strategy might have been more successful had trial counsel made additional or different statements or objections.

8

Consequently, the error here was not clear and obvious, and there is not sufficient evidence in the record to establish that the lack of an objection was not a tactical decision.

Because Ozuna fails to establish a clear violation of an unwaived constitutional right, she fails to establish a claim of fundamental error in this case, and we need not address whether the alleged error actually affected the outcome of the trial.

## B.    Evidence of Identifying Ozuna

Ozuna argues the State committed misconduct by eliciting testimony from the officer in contravention of the district court's ruling on such evidence.  At issue is evidence regarding the identification of Ozuna.  Prior to trial, the district court was concerned with statements in the State's probable cause affidavit; in particular, that the officer identified Ozuna due to previous contact with her.  The State explained the officer knew this subject was not to be mentioned at trial and the officer agreed not to volunteer the information.  Nonetheless, the following exchange occurred during the State's direct examination of the officer:

> Q:    Okay.  When you arrived there, what did you see?
> A:    When I pulled up, the other officer was already on scene and was speaking to an individual sitting in a vehicle.  And then I encountered Ms. Ozuna standing on the sidewalk in front of the residence.
> Q:    Okay.  I'm assuming you identified the individual that you spoke with?
> A:    Yes, I did.
> Q:    How did you identify her?
> A:    I was able to identify her from a previous contact.  So as soon as I saw her, I recognized her.
> Q:    Okay.  And who did you identify that person to be?
> A:    Janell Ozuna.

Ozuna claims the direct examination amounted to prosecutorial misconduct.  She asserts that the evidence was inadmissible because it was irrelevant under Idaho Rule of Evidence 401, it was a prior bad act and failed to satisfy any exception in I.R.E. 404(b), and it was overly prejudicial under I.R.E. 403.  Although the questioning was not objected to at trial, Ozuna argues the prosecutorial misconduct was fundamental error.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair.  *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007).  However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial.  *Id.* A fair trial is not necessarily a perfect trial.  *Id.*  Because Ozuna made no objection at trial, this

Court may only reverse when the misconduct constitutes fundamental error. *Miller*, 165 Idaho at 122, 443 P.3d at 136.

The alleged misconduct in this case was the State's introduction of evidence the district court found to be inadmissible. This Court can envision circumstances in which the violation of a court's pretrial order could ultimately be found to violate a due process right of a defendant. *See State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010). In that circumstance, the violation may be found to constitute fundamental error. That is not the case here.

Here, after the district court explained the officer's prior contact with Ozuna was inadmissible evidence, and after the State assured the district court the officer would not mention the prior contact during trial, the officer nevertheless testified at trial that he was able to identify Ozuna from a previous contact. It does not appear the State intentionally elicited the improper testimony from the officer, but such intent is not determinative because the officer's testimony is imputed to the State, whether or not the State intended to elicit the response. *State v. Ellington*, 151 Idaho 53, 67, 253 P.3d 727, 741 (2011). While improper, violations of evidence rules do not typically give rise to due process claims or establish fundamental error. *Perry*, 150 Idaho at 226, 245 P.3d at 978. Evidentiary errors do not implicate constitutional considerations unless the error deprives the defendant of his Fourteenth Amendment due process right to a fair trial. *State v. Dunlap*, 155 Idaho 345, 370, 313 P.3d 1, 26 (2013).

We understand that Ozuna is claiming the violation of the district court's order--rather than the admission of evidence--is the error. Nonetheless, at its core, Ozuna's complaint is that the evidence was improperly admitted, which makes this an evidentiary issue and not a constitutional due process issue.

This Court determines the erroneous admission of evidence in this case does not go to the foundation or basis of Ozuna's rights, nor does it take from her a right which was essential to her defense. The erroneous admission of evidence in this case does not rise to the level of a due process violation such that it can transform the violation of a rule or statute (expressly excluded from the fundamental error analysis in *Perry*, 150 Idaho at 226, 245 P.3d at 978) into a fundamental error claim. A substantial right of the defendant is not infringed upon just because his or her trial counsel fails to make an appropriate evidentiary objection. *State v. Diaz*, 163 Idaho 165, 170, 408 P.3d 920, 925 (Ct. App. 2017). Thus, the officer's testimony regarding his identification of Ozuna did not constitute fundamental error.

**IV.**

**CONCLUSION**

Because fundamental error did not occur in this case, we affirm the Ozuna's judgment of conviction.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.